**Nonn Ann JONES and Herbert Jones, Appellants,**

v.

**Dr. Otto PAPP, M.D., Appellee.**

**No. C14–88–00384–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 19, 1989.

Rehearing Denied Nov. 24, 1989.

Evelyn Jo Wilson, Houston, for appellants.

Keith S. Dubanevich and Jay D. Hirsch, Houston, for appellee.

Before CANNON, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a summary judgment in a medical malpractice case. Appellants, Nonn Ann Jones and Herbert Jones, brought suit for personal injuries allegedly sustained by them due to medical treatment and care provided to Nonn Ann Jones by Otto Papp, M.D., during a selective coronary angiography procedure performed at Memorial City General Hospital. Appellants submit that the trial court erred in granting appellee's motion for summary judgment. We affirm.

Nonn Ann Jones first consulted Dr. Papp, a board certified cardiologist, on August 6, 1981. Mrs. Jones' complaint in August of 1981 was that she was tired. She asked Dr. Papp what a physical examination, a stress test and possibly an arteriogram would show. Dr. Papp recommended that Mrs. Jones undergo an exercise EKG test to measure her aerobic capacity. Her EKG exercise test result showed that Mrs. Jones' aerobic capacity was above average. On the basis of her current symptoms and her relatively healthy EKG test result, Dr. Papp determined that Mrs. Jones did not then have a heart condition for which further investigation was indicated.

On May 5, 1983, Mrs. Jones again consulted Dr. Papp. She underwent an exercise EKG test which indicated that her aerobic capacity had deteriorated to below average. Mrs. Jones also reported to Dr. Papp that, subsequent to her initial consultation with him in August of 1981, Mrs. Jones' mother, father, and brother had all undergone coronary angiographies prior to their bypass surgeries. Based upon her marked aerobic impairment and her recent family history of heart disease, Dr. Papp determined that a coronary angiography was indicated to investigate further the condition of Mrs. Jones' heart. Mrs. Jones was admitted to Memorial City General Hospital on May 8, 1983 for selective coronary arteriography. On the evening of May 8, 1983, Mrs. Jones read and signed the consent form provided by the hospital.

On the morning of May 9, 1983, Mrs. Jones was admitted into the Cardiac Catheterization Laboratory. At 10:07 a.m., Dr. Papp punctured a hole into the right femoral artery to insert the catheter into the main vessels of the body. At 10:45 a.m., Dr. Papp withdrew the catheter. To stop blood from leaking at the site of the puncture in the femoral artery, Dr. Papp applied manual pressure to the puncture site in order for a blood clot to form there. Blood continued to leak from the puncture cite in the femoral artery into the abdominal wall. Mrs. Jones complained of pain. Dr. Papp paged Dr. Joe E. Dossey, a general surgeon, who arrived at the Catheterization Laboratory fifteen minutes after Dr. Papp had withdrawn the catheter. Drs. Papp and Dossey determined the bleeding from the puncture site had stopped; they recommended conservative management and observation of Mrs. Jones. At 4:00 p.m. both physicians examined Mrs. Jones in her hospital room. Mrs. Jones complained of a great deal of discomfort in her right lower abdomen. Both physicians determined that surgery was indicated to close the hole at the puncture site of the femoral artery and also to evacuate the hematoma which had accumulated under the right quadrant of the abdominal wall. This surgery was performed at 6:07 p.m. under general anesthesia by Dr. Dossey.

In their petition, appellants allege that Dr. Papp was negligent in failing to disclose to Nonn Ann Jones two material risks inherent in the coronary angiography procedure, namely, the risk of allergic reaction to the injected contrast media and the risk of surgical intervention under general anesthesia. Appellants also allege that Dr. Papp was negligent in his execution of the coronary angiography procedure.

Dr. Papp submitted his motion for summary judgment based upon the affidavit of Dr. Papp, Dr. Papp's deposition, the deposition of Dr. Joe E. Dossey, M.D., and the deposition of Nonn Ann Jones. Dr. Papp submitted that his summary judgment evidence proved that he had, as a matter of

law, complied with the standard of care with regard to informed consent; and that Dr. Papp, as a matter of law, caused no injury to Mrs. Jones and that he complied with the applicable standard of care in his treatment and care of Mrs. Jones. The trial court granted Dr. Papp's motion for summary judgment. The Joneses then nonsuited Memorial City General Hospital and timely perfected their appeal to this court. Attached to this opinion are *appendix No. 1* entitled, "List A Procedures," and *appendix No. 2* entitled, "Disclosure and Consent Form."

Appellants submit three points of error. In their first point of error, appellants assert the trial court erred in granting Dr. Papp's motion for summary judgment which was predicated on the erroneous argument that Dr. Papp complied, as a matter of law, with the standard of care of physicians in regard to informed consent. Appellant's point of error two alleges the trial court erred in granting Dr. Papp's motion for summary judgment which argued erroneously that nothing Dr. Papp did or failed to do, as a matter of law, caused any injury to Nonn Ann Jones. In point of error three, appellants argue the trial court erred in granting Dr. Papp's motion for summary judgment which was predicated on the erroneous ground that appellants failed to file expert testimony to rebut Dr. Papp's summary judgment proof.

A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. Unlike an appeal following a trial on the merits, when reviewing the grant of a summary judgment, the appellate court does not view the evidence in the light most favorable to the judgment of the trial court. Instead, this court must view the evidence in favor of the nonmovant, resolving all doubts and indulging all reasonable inferences in favor of reversal of the summary judgment. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985); *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (Tex.1952).

At either the trial or appellate level, the question is not simply whether the non-movant raised a material fact issue to defeat the motion. Rather, unless the movant proved beyond question it was entitled to judgment as a matter of law, this court must remand the case for a trial on the merits. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–829 (Tex.1970). The standards that must be applied when reviewing a summary judgment have been clearly mandated by the Texas Supreme Court in *Nixon v. Mr. Property Management,* 690 S.W.2d at 548:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d at 548–549; *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589, 592–93 (Tex. 1975). Further, this court must not consider evidence that favors the movant unless it is uncontroverted. *Great American Reserve Co. v. San Antonio Plumbing Supply,* 391 S.W.2d 41, 47 (Tex.1965). The judgment of the trial court cannot be affirmed on any grounds not specifically presented in the motion for summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 675 (Tex.1979).

## COMPLIANCE WITH THE STANDARD OF CARE OF PHYSICIANS IN REGARD TO INFORMED CONSENT

In their first point of error, appellants contend that Dr. Papp was negligent when he failed to disclose two risks inherent in coronary angiography which could have influenced a reasonable person in making a decision to consent to the procedure. Specifically, appellants contend that Dr. Papp failed to warn Mrs. Jones of the risk of "allergic sensitivity reaction to injected

contrast media," and also that Dr. Papp failed to warn Mrs. Jones of the "risk of surgical intervention under general anesthesia."

The resolution of this issue is whether the consent form signed by Mrs. Jones discloses the risks inherent in a coronary angiography in the manner and to the degree prescribed by the *Texas Medical Disclosure Panel.*

In 1977, the Texas Legislature enacted the Texas Medical Liability and Insurance Improvement Act (the "Act"), Tex.Rev.Civ. Stat.Ann. art. 4590i § 6.01, et seq. (Vernon 1989). At § 6.03, the Act created the *Texas Medical Disclosure Panel* (the "Panel") to establish minimum levels of disclosure for surgical and medical procedures by physicians and health care providers. List A procedures require written disclosure to patients of various specified risks. The coronary angiography provided to Mrs. Jones is a List A procedure. Proper disclosure of risks in medical procedures found on List A creates a rebuttable presumption that the physician was not negligent. Such disclosure is documented by the patient's written consent. If a physician provides at least these minimum levels of disclosure, the consent form signed by the patient will serve as evidence that the physician has discharged his duty to inform the patient.

The attorney for appellants submitted her personal affidavit stating that attached to her affidavit as Exhibit 1 were true and correct copies of entries made in the *Texas Register* dated December 3, 1982, containing Lists A and B formulated by the Panel which went into effect on January 1, 1983. Attached to this opinion is a portion of the above referenced Exhibit 1. *See appendix No. 1* entitled "List A Procedures," in which the angiography procedure is listed as a sub-category of Radiology.

■ Also, the Joneses argued to the court below that the Panel's required disclosure list (List A) as of January 1983 mandated that five risks be disclosed relative to coronary angiography. (See *appendix No 1*). Appellants also asserted that the consent form signed by Mrs. Jones discloses four possible complications, num-

bered with Roman numerals, but omits the fifth complication mandated by the Panel. (See *appendix No 2 entitled* "Disclosure and Consent Form.")

In her personal affidavit, Mrs. Jones stated that the possibility of an allergic reaction to the contrast media ("dye") is one that she would have considered important in making her decision to have the procedure and, had she known there was a possibility of such an allergic reaction, she probably would not have had the procedure at all.

Dr. Papp denies that he failed to advise Mrs. Jones of the risk of an allergic sensitivity reaction to the dye. Dr. Papp provided the trial court with the consent form utilized by Memorial City General Hospital. Dr. Papp emphasizes that the hospital's consent form signed by Mrs. Jones states that "I (we) realize that common to surgical, medical, and/or diagnostic procedures is the potential for infection, blood in veins and lungs, hemorrhage, *allergic reaction,* and even death." (emphasis added).

We note that Section 6.06 of the Act states that consent is effective if "the written consent specifically states the risks and hazards ... in the form and to the degree required by the panel under Section 6.04 of this subchapter."

Reference, in turn, to Section 6.04 reveals that:

> "Lists prepared under ... this section together with written explanations of the degree and form of disclosure shall be published in the *Texas Register.*"

Finally, our review of Section 601.1, as presented in the *Texas Register,* dated December 3, 1982, indicates the requisite degree and form of disclosure to be as follows:

> "601.1 Procedures requiring full disclosure (List A). The following treatments and procedures require full disclosure by the physician or health care provider to the patient or person authorized to consent for the patient. 7 Tex.Reg. 4223, et seq. (Dec. 3, 1982)."

*        *        *        *        *        *

3. Angiography with occlusion techniques-therapeutic.

1. Injury to artery.
2. Loss or injury to body parts.
3. Swelling, pain, tenderness or bleeding at the site of the blood vessel perforation.
4. Aggravation of the condition that necessitated the procedure.
5. Allergic sensitivity reaction to injected contrast media. (*See Appendix No 1*).

We note that the hospital's disclosure and consent form is in compliance with Section 6.06 of the Act in so far as the consent to selective coronary angiography is in writing; it is signed by the patient and by a competent witness.

The question is whether the general warning as to "allergic reactions" contained in the body of the hospital's consent form is sufficient to cover the risk of "allergic sensitivity reaction to injected contrast media" specified by the Panel's List A.

The statute and its applicable provisions are silent as to the precise method to be used relative to the requisite form and degree of written disclosure. For example, the statute does not indicate whether the risks deemed inherent in a List A procedure should be featured prominently in bold faced type or capital letters or listed consecutively at one location or enumerated by Roman or Arabic numerals or listed alphabetically.

We find that the written warning as to *allergic reactions* contained in the body of the hospital's consent form is sufficient as a matter of law to cover the fifth warning as to *allergic sensitivity reaction to injected contrast media* as required under Section 6.06 of the statute.

■ Appellants also contend that Dr. Papp was negligent in failing to disclose to Mrs. Jones the risk of surgical intervention. In her personal affidavit, Mrs. Jones stated that Dr. Papp did not tell her that there was a risk of surgical intervention under general anesthesia and, had she been so informed, then this information would

have influenced her decision to consent to the angiography.

This allegation is governed by Section 6.07(b) of the Act which provides that if the panel has made no determination concerning the disclosure of risks attendant to a particular medical procedure in question, the physician is under the "duty otherwise imposed by law."

Appellants cite in their brief the case of *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1982). In *Peterson*, the Texas Supreme Court held that the "duty otherwise imposed by law" meant the duty imposed by section 6.02 of the Act, that is, "to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." Section 6.02 replaces the common-law locality rule with a "reasonable person" rule. *Peterson*, 652 S.W.2d at 931. Thus, the focus shifts from the "reasonable medical practitioner" standard to the "reasonable person standard" which asks what risks are material to making the decision to give or withhold consent to a particular medical procedure.

The analysis of *Peterson* is applicable to the instant case to the extent that if no determination has been made by the Panel, the plaintiff must first establish by expert testimony that the medical condition complained of is a risk inherent in the medical procedure performed. *Peterson* at 931.

In the case before us, the expert testimony did not show that surgical intervention is a risk inherent in a coronary angiography. Inherent means that the risk is one which exists in and is inseparable from the procedure itself. See, e.g., *Barclay v. Campbell*, 704 S.W.2d 8, 10 (Tex.1986).

Dr. Joe E. Dossey testified in his deposition that when he does a femoral artery puncture and catheterization and withdraws the catheter, he does not put a suture or stitch in the femoral artery because he has not surgically opened the site. Dr. Dossey further indicated that it would have been physically impossible for Dr. Papp to have put a stitch in Mrs. Jones' femoral artery upon concluding the procedure because *surgery is not an intended part of*

*the coronary angiography procedure.* (emphasis added).

Clearly, surgery is not a component intrinsic to the purely investigative or diagnostic procedure known as coronary angiography. The concept of surgical intervention contemplates the correction or repair of a known physical condition. For appellants to suggest that surgical intervention is a risk inherent to the investigative or diagnostic procedure of coronary angiography indicates a misunderstanding of the fundamental distinction between a diagnostic and a surgical procedure. We hold that appellants did not submit evidence to show that surgical intervention is a risk inherent in the coronary angiography procedure.

Section 6.05 of the Act provides that "[a] physician or health care provider shall be considered to have complied with the requirements of this section if disclosure is made as provided in Section 6.06 of this subchapter." Accordingly, once Mrs. Jones read and signed the hospital's consent form, Dr. Papp's obligation to make full disclosure of the risks inherent in coronary angiography was discharged and he was entitled to summary judgment as a matter of law unless appellants presented sufficient summary judgment evidence to rebut the validity of the consent form.

In this case, appellants did not present summary judgment evidence sufficient to rebut the presumption. On the contrary, the summary judgment evidence reveals the following: Mrs. Jones stated in her deposition that she read over the form the night before her selective angiography and signed it; when she read the form over she thought she understood what it was saying; and she had no questions of the nurse who brought her the form to sign. We note that Mrs. Jones, in her personal affidavit, does not refer to the hospital's written consent form, let alone question its validity or effect.

Applying the review test previously set forth, we conclude that appellants did not submit evidence sufficient to rebut Dr. Papp's clear summary judgment evidence that Mrs. Jones was provided with the requisite disclosure of the risks inherent in the coronary angiography. Appellants' point of error one is overruled.

### NON–DISCLOSURE OF RISK AND CAUSATION OF INJURY

In their second point of error, appellants assert that Dr. Papp's failure to disclose the risks inherent in the coronary angiography procedure was the proximate cause of the alleged injuries sustained by Mrs. Jones.

As to the inherent risk of allergic sensitivity reaction to the dye, the summary judgment evidence, based upon the depositions of Drs. Dossey and Papp and the deposition of Mrs. Jones, establishes conclusively that Mrs. Jones did not sustain injury from the inherent risk of allergic sensitivity reaction to the dye for the reason that this risk did not occur. Dr. Papp's reliance upon the case of *Harfield v. Owen,* 618 S.W.2d 902, (Tex.Civ.App.—El Paso, writ ref'd n.r.e.) is well founded. In *Harfield,* the El Paso Court of Appeals ruled:

"The theory of informed consent is based on negligence and a plaintiff may not recover unless he proves both that he would not have consented to treatment had he been informed of the undisclosed risk *and that he was injured by the occurrence of the risk of which he was not informed."* *Harfield,* 618 S.W.2d at 905 (emphasis added).

In the case before us, it is established conclusively that Mrs. Jones was not injured by the occurrence of the risk of which she claims she was not informed.

As to the "risk of surgical intervention," as explained previously, surgical intervention is not a risk inherent to the investigative or diagnostic procedure undertaken by Mrs. Jones. Rather, surgical intervention is the corrective treatment of the occurrence of a risk inherent in the diagnostic procedure undertaken. The risk inherent to the procedure undertaken which *did* occur in Mrs. Jones' case was that of bleeding at the site of the blood vessel perforation. This risk was fully disclosed on the consent form signed by Mrs. Jones.

We hold that the Joneses did not introduce evidence sufficient to establish a genuine issue of material fact that Mrs. Jones sustained injury due to Dr. Papp's alleged failure to warn her of risks inherent in the coronary angiography. Appellants' point of error two is overruled.

## EXPERT TESTIMONY TO REBUT DR. PAPP'S SUMMARY JUDGMENT PROOF

■ In their third point of error, appellants argue that the trial court erred in granting Dr. Papp's motion for summary judgment on January 12, 1988 which was one month before the deadline allowed by the trial court for appellants to designate their experts for trial. The Joneses did make a written request in their Response In Opposition to Motion for Summary Judgment for a continuance pursuant to Rule 166a(f) on the ground that they were not able to locate an independent testifying expert in the Houston community.

In his brief, Dr. Papp argues that the granting of a continuance is discretionary with the trial court and that the trial court did not abuse its discretion in refusing to grant a continuance for the following reasons: (1) Dr. Papp had a right to utilize the provisions of Rule 166a to seek dismissal of appellants' lawsuit; (2) the pre-trial deadline of the trial court allowing the Joneses until February 16, 1988 to designate their experts for trial did not prohibit Dr. Papp from filing a motion for summary judgment prior to the expiration of the Joneses' deadline; (3) appellants had proper notice of the motion for summary judgment and still did not file any controverting affidavit from a qualified medical expert. We agree. Further, this case had been on file since January 27, 1984, which was four years before the trial court signed the order granting the summary judgment on January 12, 1988. We find this was sufficient time for the Joneses to have located their expert witnesses to answer Dr. Papp's motion for summary judgment. We do not find an abuse of discretion by the trial court in refusing to grant the Joneses a continuance to respond to Dr. Papp's motion for summary judgment.

Dr. Papp's motion for summary judgment was based upon the uncontroverted expert testimony of Otto Papp, M.D., and Joe E. Dossey, M.D. In his affidavit, Dr. Papp described how he punctured the femoral artery and how he applied pressure continuously for approximately twenty minutes to the puncture site upon withdrawal of the catheter.

Dr. Dossey testified in his deposition that he had no criticism of the choice of the puncture site in the femoral artery; and there was nothing evident to him from his review of the hospital record or from his personal recollection that Dr. Papp's management and treatment of Mrs. Jones fell below the acceptable standard of care for a cardiologist in 1983 in the community.

■ In her personal affidavit, Mrs. Jones stated that she did not feel that Dr. Papp acted as a prudent physician should have acted; that she did not believe that Dr. Papp kept continuous pressure on the puncture site in her groin area; that she did not remember his doing so. The feeling and the belief of Mrs. Jones as to the standard of care provided by Dr. Papp are insufficient to defeat Dr. Papp's motion for summary judgment. *Trans–Continental Finance Corp. v. Summit Nat. Bank,* 761 S.W.2d. 575, (Tex.App.—Fort Worth, 1988, no writ). Moreover, the Texas Supreme Court has held that, "Unless authorized by statute, an affidavit is insufficient unless allegations contained therein are direct and unequivocal and perjury can be assigned upon it...." *Brownlee v. Brownlee,* 665 S.W.2d 111 (Tex.1984).

Except under extremely rare circumstances, such as the so called "foreign object in the body" cases, it is well settled under the general law of Texas that a plaintiff must produce expert medical testimony to sustain a medical malpractice action:

"A patient has no cause of action against his doctor for malpractice unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and

(2) that it was a proximate cause of the plaintiff's injuries." *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949).

The Texas Supreme Court has held that where there is no such expert evidence of want of care, "there is no evidence of it proper to be submitted to a jury." *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1965). Under Texas law a defendant is entitled to summary judgment in his favor if he can negate one of the essential elements of the Plaintiffs' cause of action. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33 (Tex.1983). It is clear that the defendant in a medical malpractice case can obtain summary judgment based solely on uncontroverted expert testimonial evidence. *See, Duncan v. Horning*, 587 S.W.2d 471 (Tex.Civ.App.—Dallas 1979, no writ); *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213 (Tex.App.—Houston [1st Dist.] 1986, no writ).

Accordingly, we find the trial court was correct in granting Dr. Papp's motion for summary judgment as Dr. Papp's summary judgment evidence established that there is no genuine issue of material fact with respect to appellants' allegation of negligent medical care and treatment. Appellants' point of error three is overruled.

The judgment of the trial court is affirmed.

## APPENDIX NO. 1
## LIST A PROCEDURES

In Addition

2. Seizures.
3. Recurrence or continuation of the condition that required this operation.
6. Transphenoidal hypophysectomy or other pituitary gland operation.
   1. Spinal fluid leak.
   2. Necessity for hormone replacement.
   3. Recurrence or continuation of the condition that required this operation.
   4. Nasal septal deformity or perforation.
7. Cerebral spinal fluid shunting procedure or revision.
   1. Shunt obstruction or infection.
   2. Seizure disorder.
   3. Recurrence or continuation of brain dysfunction.

14. Radiology.
   1. Angiography, aortography, arteriography (arterial injection of contrast media-diagnostic).
      1. Injury to artery.
      2. Damage to parts of the body supplied by the artery with resulting loss of function or amputation.
      3. Swelling, pain, tenderness or bleeding at the site of the blood vessel perforation.
      4. Aggravation of the condition that necessitated the procedure.
      5. Allergic sensitivity reaction to injected contrast media.

   2. Myelography.
      1. Chronic pain.
      2. Transient headache, nausea, vomiting.
      3. Numbness.
      4. Impaired muscle function.
   3. Angiography with occlusion techniques-therapeutic.
      1. Injury to artery.
      2. Loss or injury to body parts.
      3. Swelling, pain, tenderness or bleeding at the site of the blood vessel perforation.
      4. Aggravation of the condition that necessitated the procedure.
      5. Allergic sensitivity reaction to injected contrast media.

4. Angioplasty (intravascular dilatation technique).
   1. Swelling, pain tenderness, or bleeding at the site of vessel puncture.
   2. Damage to parts of the body supplied by the artery with resulting loss of function or amputation.
   3. Injury to the vessel that may require immediate surgical intervention.
   4. Recurrence or continuation of the original condition.
   5. Allergic sensitivity reaction to injected contrast media.

15. Respiratory system treatments and procedures.
   1. Excision of lesion of larynx, vocal cords, trachea. (No risks or hazards assigned at this time.)
   2. Rhinoplasty or nasal reconstruction with or without a proplasty.
      1. Deformity of skin, bone or cartilage.
      2. Creation of new problems, such as, septal perforation or breathing difficulty.
   3. Submucous resection of nasal septum or nasal septoplasty.
      1. Persistence, recurrence or worsening of the obstruction.
      2. Perforation of nasal septum with dryness and crusting.
      3. External deformity of the nose.

December 3, 1982     7 TexReg 4227

## APPENDIX NO. 2
## DISCLOSURE AND CONSENT FORM

This form is designed to comply with the requirements promulgated by The Texas Medical Disclosure Panel

# MEMORIAL CITY GENERAL HOSPITAL
## DISCLOSURE AND CONSENT
## MEDICAL AND SURGICAL PROCEDURES

*TO THE PATIENT* You have the right, as a patient, to be informed about your condition and the recommended surgical, medical, or diagnostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved. This disclosure is not meant to scare or alarm you, it is simply an effort to make you better informed so you may give or withhold your consent to the procedure.

I (we) voluntarily request Dr. _Jeff Case, Monemer_
as my physician, and such associates, technical assistants and other health care providers as they may deem necessary, to treat my condition which has been explained to me as: _Left put Neal disease_

I (we) understand that the following surgical, medical, and/or diagnostic procedures are planned for me and I (we) voluntarily consent and authorize these procedures: Angiography, aortography, arteriography (arterial injection of contrast material—diagnostic) _Selective Coronary angiography and left ventriculogram_

I (we) understand that my physician may discover other or different conditions which require additional or different procedures than those planned I (we) authorize my physician, and such associates, technical assistants and other health care providers to perform such other procedures which are advisable in their professional judgement.

I (we) (do) (do not) consent to the use of blood and blood products as deemed necessary

I (we) understand that no warranty or guarantee has been made to me as to result or cure.

Just as there may be risks and hazards in continuing my present condition without treatment, there are also risks and hazards related to the performance of the surgical, medical, and/or diagnostic procedures planned for me. I (we) realize that common to surgical, medical, and/or diagnostic procedures is the potential for infection, blood clots in veins and lungs, hemorrhage, allergic reactions, and even death I (we) also realize that the following risks and hazards may occur in connection with this particular procedure.

(I) Injury to artery

(II) Damage to parts of the body supplied by the artery with resulting loss of function or amputation

(III) Swelling, pain, tenderness or bleeding at the site of the blood vessel perforation.

(IV) Aggravation of the condition that necessitated the procedure.

I (we) understand that anesthesia involves additional risks and hazards but I (we) request the use of anesthetics for the relief and protection from pain during the planned and additional procedures. I (we) realize the anesthesia may have to be changed possibly without explanation to me (us).

I (we) understand that certain complication may result from the use of any anesthetic including respiratory problems, drug reaction, paralysis, brain damage or even death. Other risks and hazards which may result from the use of general anesthetics range from minor discomfort to injury to vocal cords, teeth or eyes. I (we) understand that other risks and hazards resulting from spinal or epidural anesthetics include headache and chronic pain.

I (we) have been given an opportunity to ask questions about my condition, alternative forms of anesthesia and treatment, risks of nontreatment, the procedures to be used, and the risks and hazards involved, and I (we) believe that I (we) have sufficient information to give this informed consent.

I (we) certify this form has been fully explained to me, that I (we) have read it or have had it read to me, that the blank spaces have been filled in, and that I (we) understand its contents.

DATE _May 8, 1983_ TIME _9°°_ AM/PM

_Horace B. Jones_
PATIENT/OTHER LEGALLY RESPONSIBLE PERSON SIGN

WITNESS: _Steve D. Jones_
_Memorial City General Hospital_
_910 Frostwood_
_1015 Houston, Texas_