Don A. HARTFIEL, Appellant,

v.

Courtney OWEN, Appellee.

No. 6872.

Court of Civil Appeals of Texas,
El Paso.

June 24, 1981.

Rehearing Denied July 22, 1981.

Law Offices of Ray Taylor, P. C., Ray E. Taylor, Phillip R. Spicer, Jr., Hardberger & Herrera, Inc., Phil Hardberger, San Antonio, for appellant.

Clemens, Spencer, Welmaker & Finck, George H. Spencer, San Antonio, for appellee.

## OPINION

WARD, Justice.

This appeal is from a take nothing judgment rendered against the Plaintiff in his malpractice action against a chiropractor, who was alleged to have caused the Plaintiff's severe stroke. The judgment was based on a jury finding which was in the negative to the inquiry of whether the stroke was due to any negligence of the Defendant. The Plaintiff contends that he was badly prejudiced by impeachment on collateral matters; that the doctrine of lack of informed consent was applicable to the case; and that the jury's verdict was against the great weight and preponderance of the evidence. We will affirm the judgment of the trial Court.

The Plaintiff, Don A. Hartfiel, thirty-three years of age, was a doctor of veterinarian medicine, and had been a regular chiropractic patient of the Defendant, Courtney Owen, since 1973. On April 12, 1977, while he was undergoing a chiropractic adjustment to his neck, he suffered a severe stroke. He was immediately taken to the hospital, and spent some eight days in intensive care. He contended that he was permanently disabled from the stroke and that he would no longer be able to practice his profession. He filed suit, alleging that the Defendant was negligent in performing the chiropractic adjustment, and in failing to obtain an informed consent. Trial was to a jury, which found that the Plaintiff suffered a stroke during the chiropractic adjustment, but failed to find that the stroke was due to any negligence of the Defendant. The take nothing judgment being rendered, the Plaintiff appeals.

The Plaintiff first attacks the judgment by four points which claim there was error in admitting the Defendant's Exhibit No. 5. This was a note which was written by the Plaintiff to his doctor some six days after he had suffered his stroke and while he was in intensive care. The note, or letter, is his personal account of his condition and symptoms covering his past seven years. The letter contains statements referring to the Plaintiff's "crazies," an ulcer disease, his inability to get along with the owners of various clinics where he worked, chronic pain over his upper thoratic area and as of late his experience with severe headaches, drinking tendencies, eyes watering, insomnia, and feelings of "something ugly and monstrous growing inside my head ... *my crazies!*" In addition, at various places interspersed within the account are references to drug use, smoking marijuana, illicit relations with various women, bizarre religious leanings, irrational behavior, and an attraction towards a six-year-old who lived next door.

To base his damages, the Plaintiff offered extensive evidence regarding his physical fitness; that he was the best conditioned athlete in his army unit; and that for ten years he had enjoyed fine health, enjoyed running regularly, and stayed in top physical condition; that in school he had been an outstanding student and had graduated from the school of veterinary medicine with highest honors. Evidence was also offered that he worked hard in his profession, was most personable and was on the threshold of being financially well off from the business that he was able to generate; that he was the sort of person that people liked for veterinary services. Thus, it was the position adopted by the Plaintiff at the trial that he was physically in good condition and very strong; that this was essential to his type of work; that he had a charming and agreeable personality that would appeal to the public and would naturally bring in profitable business, and that he had all the qualities to be a successful and profitable veterinarian.

The Appellee maintains that the exhibit was admissible since (1) it did contain relevant information concerning the cause of the Plaintiff's stroke and the amount of his damages; (2) it did rebut a portion of the evidence on a variety of subjects introduced by the Plaintiff; (3) the Plaintiff failed to make a valid legal objection to the exhibit; and (4) the Plaintiff failed to specify the exact portions of the exhibit he objected to, relying instead on generalities.

The circumstances surrounding the introduction of the exhibit were confusing. Three exhibits, including No. 5, were taken up at the same time out of the presence of the jury. Exhibit No. 5 is difficult to read. There is a disjointed discussion with the Court concerning the exhibits and it was apparent that the Plaintiff's attorney had not previously read Exhibit 5. Parts were then read by the attorney and by the Court at the time of the offer, and at that time a statement was made by the Defendant's attorney regarding which parts that he would read to the jury, although all of the exhibit was being offered. Under the circumstances, we agree with the Defendant. Part of the exhibit was admissible as original evidence on behalf of the Defendant since those parts support his contention that the stroke was caused by emotional stress and a build-up in the Plaintiff's life. References to the bad habits which led to the severe headaches, constant pain and insomnia were admissible as suggesting that stress, and not the chiropractic manipulation, caused the stroke. These same parts were likewise admissible as rebuttal evidence to the Plaintiff's extensive evidence as to his strength, his good health, and his life expectancy. *Cameron Mill & Elevator Company v. Anderson*, 98 Tex. 156, 81 S.W. 282 (1904); *Fisher v. Shipp*, 411 S.W.2d 638 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.).

Further, under the circumstances, the objections that the exhibit was irrelevant, remote in time, immaterial and prejudicial gave little help to the trial Court. These generalities were not a valid way to challenge the various objectionable parts of the exhibit. *Horn v. Atchison, Topeka and Santa Fe Railway Company*, 519 S.W.2d 894 (Tex.Civ.App.—Beaumont 1975, no writ); *Bales v. Delhi-Taylor Oil Corporation*, 362 S.W.2d 388 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.); *In re Boultinghouse's Estate*, 267 S.W.2d 614 (Tex.Civ. App.—El Paso 1954, writ dism'd).

Finally, these general objections failed to point out specifically those portions of the exhibit which were inadmissible. The trial Court had no duty on its own motion to separate that which was admissible from that which was not. Having failed to specify the exact portions which were inadmissible, the Plaintiff has waived his complaint. *Brown & Root, Inc. v. Haddad*, 142 Tex. 624, 180 S.W.2d 339 at 341 (1944); *K-Mart No. 4195 v. Judge*, 515 S.W.2d 148 at 152 (Tex.Civ.App.—Beaumont 1974, writ dism'd). The first four points are overruled.

The next four points contend that the trial Court erred in refusing to give the Plaintiff's requested instruction on informed consent. The following instruction was requested:

> You are instructed that a chiropractor has a duty to make a reasonable disclosure to a patient of risks that are incident to diagnosis and treatment. This duty is based upon the patient's right to information adequate for him to exercise an informed consent to or refusal of the procedure.

The parties have presented extensive and able briefs on the applicability of the doctrine of informed consent to the present case. However, we are of the opinion that no error is presented under the evidence before us for one fundamental reason. It was undisputed that the Plaintiff had gone to the Defendant since 1973 and had received between forty and fifty neck manipulations. Though the Defendant admitted he had never told the Plaintiff about any possible risk from the adjustments, the record is also silent as to what, if anything, the Plaintiff would have done on the occasion if he had been informed of any risk, and whether or not he would have refused the procedure. The rule has been stated in *Wilson v. Scott*, 412 S.W.2d 299 (Tex. 1967),

that the plaintiff has the burden in such a case to prove not only what should have been disclosed but causation and damages as well. The theory of informed consent is based on negligence and a plaintiff may not recover unless he proves both that he would not have consented to treatment had he been informed of the undisclosed risk and that he was injured by the occurrence of the risk of which he was not informed. *Karp v. Cooley,* 493 F.2d 408 at 421–22 (5th Cir.) cert. denied 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974); *see:* 7 St. Mary's Law Journal, *A Study of Medical Malpractice in Texas,* 732 at 754 (1975). Appellant's Points of Error Nos. 5, 6, 7 and 8 are overruled.

The jury's failure to fault the Defendant with any negligence is the subject of the last two points which complain that the finding was against the great weight and preponderance of the evidence. Beside the informed consent concept discussed, the Plaintiff contended that negligence was present because x-rays were not taken, that too much force was used in the neck manipulation, and, since injury was received while the chiropractic adjustment was being made, the standard of care for chiropractors that they shall never harm a patient was violated. We have considered and weighed all of the evidence favorable to these contentions and the substantial testimony controverting each of them, and, having done so, we conclude that the finding in question is not against the great weight and preponderance of the evidence as to be clearly wrong and unjust. The last two points are overruled.

The judgment of the trial Court is affirmed.