**Raquel GREENE, Appellant,**

v.

**Michelle THIET, M.D. & Matilda Perkins, M.D., Appellees.**

**No. 04–92–00154–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 25, 1992.

As Modified on Denial of Rehearing Jan. 13, 1993.

George W. Mauze, II, Law Offices of Mauze & Jones, San Antonio, for appellant.

George F. Evans, Jr., William R. Crow, Jr., Ball & Weed, P.C., Bruce E. Anderson, Brin & Brin, P.C., San Antonio, for appellees.

Before PEEPLES, BIERY and GARCIA, JJ.

BIERY, Justice.

Appellant's motion for rehearing is denied. Our opinion of November 25, 1992 is modified to add footnote 1.

This summary judgment appeal presents the following issues:

a) the burden of a defendant-physician who moves for summary judgment on the causation elements in an informed consent case following the 1977 enactment of the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT. ANN. art. 4590i, § 6.02 (Vernon Supp. 1992).

b) if causation is sufficiently negated, the burden on the plaintiff-patient to controvert with expert medical summary judgment evidence that the patient did in fact suffer an injury because of the doctor's conduct.

Plaintiff/appellant, Raquel Greene, brought suit against the defendants-physicians, Michelle Thiet, M.D. and Matilda Perkins, M.D., alleging a lack of informed consent. Drs. Thiet and Perkins moved for summary judgment. The trial court granted the motion, specifically finding that the defendants-physicians had sufficiently negated the causation element of Ms. Greene's cause of action. In one point of error, Ms. Greene appeals. We affirm.

Appellant Greene was originally seen by Dr. Thiet on August 25, 1988, seeking abdominoplasty and liposuction, but was turned down for the procedure pending weight loss. She returned to Dr. Thiet on January 20, 1989. She had developed symptomatic cholelithiasis and had been scheduled for a cholecystectomy to be performed by Dr. Perkins. Ms. Greene requested the abdominoplasty and liposuction be performed at the same time as the cholecystectomy, and both defendants-physi-

cians agreed. Prior to the surgeries, Ms. Greene signed informed consent forms agreeing to the surgeries and acknowledging she had been advised of the risks involved in each surgery. Although appellant denies she was informed of the increased risks of wound healing problems associated with the simultaneous performance of a cholecystectomy and an abdominoplasty/liposuction, the record contains a postoperative report stating:

> The patient [was] informed that the risk of complications are slightly increased with concurrent abdominal operations. She has also been apprised of the complications as listed on the operative permit and she is fully aware of them. She requests that the procedure be performed.[1]

The procedure was performed uneventfully on February 16, 1989. Appellee Perkins was the lead surgeon during the cholecystectomy and the assistant surgeon during the abdominoplasty and liposuction. Appellee Thiet was the lead surgeon on the abdominoplasty and liposuction and the assistant surgeon on the cholecystectomy. The surgeries took just under four hours which, according to the record, was within the time normally expected for an abdominoplasty and liposuction alone.

Following the surgery, Ms. Greene suffered numerous post-surgical complications due to wound healing problems. These problems resulted in necrosis of the tissue, which necessitated three debridements after her discharge. Subsequently, she was admitted to the hospital for a skin graft. Because of the healing problems which allegedly necessitated further medical care, including additional surgeries to correct scarring, pain, poor cosmetic results, disfigurement and the resulting mental anguish, Ms. Greene filed suit against Drs. Thiet and Perkins. Appellant Greene does not dispute that skin necrosis is a recognized complication of abdominoplasty and liposuction, and that skin necrosis can, and does, occur in the absence of any negligence on the part of the operating surgeon.

Rather, she contends summary judgment was improperly granted because a genuine issue of material fact exists as to whether the defendants-physicians caused appellant Greene's injuries because of a failure to inform her of the increased risk of complications due to performing both surgeries simultaneously. She contends she would not have had both surgeries had she been so informed. Appellant Greene originally sued also on the grounds of traditional negligence in performing the surgeries, but subsequently amended her pleadings to delete the negligence cause of action.

■ A defendant in a medical malpractice action is entitled to summary judgment when the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *White v. Wah*, 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ); *see also Zapata v. Rosenfeld*, 811 S.W.2d 182, 183–84 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (upholding summary judgment on pleadings in medical malpractice claim involving alleged contract to cure). When moving for summary judgment, the defendant-physician has the burden to negate one or more of the following elements of the patient's claim: (1) a duty of the physician to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) resulting injury; and (4) a causal connection between the defending party's conduct and the injury. *White*, 789 S.W.2d at 315; *Pinckley v. Gallegos*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied); *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ).

■ This fourth element, the causal connection, is usually defined by the courts in terms of what is called "proximate cause" or "legal cause." PROSSER & KEETON ON THE LAW OF TORTS § 41, at 263 (5th ed. 1984). The most common problem associat-

---

**1.** Even though Greene's denial of being informed of increased risk of wound healing problem probably raises a fact issue on the "breach of duty to inform" element, our disposition of the case on the "proximate cause" element renders such fact issue immaterial.

ed with proximate cause is that of "causation in fact." *Id.* at 264. Although classified as an issue of "fact," the standard test for determining cause in fact requires the factfinder to compare what did occur with what would have occurred if hypothetical, contrary-to-fact circumstances had existed. *Id.* As discussed in detail below, in an informed consent case, the factfinder is required to determine whether a reasonable person would have refused the treatment or procedure had he been fully informed of the inherent risks which would influence such a decision. *McKinley v. Stripling,* 763 S.W.2d 407, 410 (Tex.1989). Additionally, a second prong of causation is that an act or omission by a defendant is not regarded as a cause of an injury if the particular injury would have occurred without it. *See* PROSSER & KEETON ON THE LAW OF TORTS, § 41, at 265. For example, the failure to install a proper fire escape on a hotel is no cause of the death of a man suffocated in bed by smoke. *Smith v. The Texan, Inc.,* 180 S.W.2d 1010, 1012 (Tex. Civ.App.—Fort Worth 1944, writ ref'd w.o.m.) (no showing guest made any effort to use fire escape). From such circumstances, the United States Supreme Court derived a rule, commonly known as the "but for" or "sine qua non" rule, which may be stated as follows: the defendant's conduct is a cause of the plaintiff's injury if the injury would not have occurred but for that conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977). Conversely, the defendant's conduct is not a cause of the injury if the injury would have occurred even without the defendant's conduct sued upon. *See Id.* Applying this general rule to an informed consent case such as this, we believe the "but for" rule may be stated as follows: the defendant-physician's failure to disclose is not a cause of the patient's injury if the patient was not injured by the occurrence of the risk of which he was not informed.

Once the defendant-movant negates one or more of the essential components of the patient's cause of action, the burden shifts to the non-movant to produce controverting evidence raising an issue of fact as to the element or elements negated. *Pinckley,* 740 S.W.2d at 531, *see also Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 379–80 (Tex.App.—Texarkana 1989, no writ) (unless movant's proof is legally insufficient, non-movant must produce proof to avoid summary judgment). It is clear from the trial court's judgment that the defendants-physicians in the trial court successfully attacked appellant Greene's cause of action on the issue of causation. We focus, therefore, upon the summary judgment proof submitted on the issue of whether the defendants-physicians negated the causal connection between the failure to disclose the risks inherent in combining the medical procedures and appellant Greene's injuries. To determine whether the evidence supporting the motion for summary judgment is legally sufficient, we must consider the common law, the changes wrought by the enactment of the Medical Liability and Insurance Improvement Act ("the act" or "article 4590i"), and the effect of those changes upon this litigation. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Supp.1992).

In litigation concerning the question of informed consent before the enactment of article 4590i, unless the mode or form of treatment was a matter of common knowledge or was within the experience of the layman, the requisite proof of negligence had to be established through expert testimony. *Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex.1977). The common law focused on the doctor, rather than upon the patient. *Price v. Hurt,* 711 S.W.2d 84, 87 (Tex.App.—Dallas 1986, no writ). The reasonableness of the defendant-physician's disclosure was determined by the standards followed by other health care providers in the same or a similar community. *Id.* The common law allowed the physicians to set the standards against which their conduct would be measured in a malpractice suit. *Peterson v. Shields,* 652 S.W.2d 929, 930 (Tex.1983). Article 4590i, section 6.02, of the act, however, provides:

In a suit against a physician or health care provider involving a health care lia-

bility claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that *could have influenced a reasonable person in making a decision to give or withhold consent.*

TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Supp.1992) (emphasis added). Thus, article 4590i replaced the common law "locality rule" or reasonable medical practitioner standard with a "reasonable person" standard, which asks what risks are material to the patient in making the decision to give or withhold consent to a particular medical procedure. *Peterson,* 652 S.W.2d at 931; *Price,* 711 S.W.2d at 87. This reasonable person standard focuses upon the disclosures which would influence a reasonable person deciding whether to consent to a prescribed medical procedure, rather than the disclosures the physicians in a certain community deem material. *Peterson,* 652 S.W.2d at 931; *Price,* 711 S.W.2d at 87.

Although the statutory scheme shifted the focus from what a reasonably prudent doctor would disclose to a patient to what information is needed by a reasonable patient in making a decision to give or withhold consent for a medical procedure, the Texas Supreme Court has interjected both statutory and traditional causation elements into informed consent cases. *See McKinley v. Stripling,* 763 S.W.2d 407, 409–10 (Tex.1989). In order to establish that the failure to obtain informed consent was a proximate cause of his injuries, the plaintiff, on the merits, must prove that a reasonable person would have refused the treatment or procedure had he been fully informed of all inherent risks which would influence his decision. *Id.* at 410. Additionally, and of great importance to this case, the patient must also establish, on the merits, that he developed the nondisclosed risks or hazards, or, stated another way, that he was injured by the occurrence of

the risk of which he was not informed. *Jones v. Papp,* 782 S.W.2d 236, 241 (Tex. App.—Houston [14th Dist.1989, writ denied]); *Hartfiel v. Owen,* 618 S.W.2d 902, 905 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.); *see also Karp v. Cooley,* 493 F.2d 408, 421–22 (5th Cir.), *cert. denied,* 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974).

▮ Thus, in a statutory informed consent action, the necessity of establishing a causal connection between undisclosed risks and harm becomes twofold: at a trial on the merits, a plaintiff must prove the causal connection which must be shown in statutory informed consent cases (disclosure would have resulted in a decision against the proposed treatment) *and* the traditional causal relationship between the particular medical procedure and resulting harm, as in an ordinary negligence action (the injury complained of was caused "in fact" by the nondisclosed risk).

▮ Conversely, a defendant moving for summary judgment must prove the alleged causal connection in the negative: the movant-physician must establish *either* that disclosure would not have resulted in a decision against the procedure *or* that the patient was not injured by the risk of which he was not informed. It is not necessary for the defendant-movant to disprove both components of the causal connection. Rather, the defendant is entitled to summary judgment if he can negate any one of the essential elements of the plaintiff's cause of action. *Pinckley,* 740 S.W.2d at 531; *Nicholson v. Memorial Hosp. Sys.,* 722 S.W.2d 746, 750–51 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

As noted above, once the movant negates the causation element of the informed consent cause of action, the burden shifts to the non-movant patient to produce controverting evidence raising an issue of fact as to the causation component negated. *See Pinckley,* 740 S.W.2d at 531; *Nicholson,* 722 S.W.2d at 751. Here, if Drs. Thiet and Perkins met their burden of negating either component of the causation element of appellant Greene's informed consent cause of action, the burden would shift to Ms.

Greene to produce controverting evidence to raise a fact issue regarding causation.

In order to show the nature of the summary judgment proof in this case, we look at the affidavit and deposition testimony of Drs. Thiet and Perkins relied upon to show appellees successfully negated "causation in fact" and the related "but-for" rule. The affidavit of appellee Thiet states in detail the surgical procedures to be followed to avoid healing difficulties following an abdominoplasty and liposuction operation, and that all such procedures were followed. Omitting that part establishing her qualifications and appellant's patient history, appellee Thiet also stated:

> Skin necrosis is a recognized complication of surgery of this kind, and was fully discussed with the patient prior to the surgery. Skin necrosis can and does occur in the absence of any negligence on the part of the operating surgeon.
>
> . . . .
>
> It is my opinion that nothing which I did or failed to do during the abdominoplasty of Raquel Greene caused or contributed to develop this skin necrosis. This is a recognized but always disappointing complication of this surgery . . .

The affidavit of Dr. Perkins, and the operative report attached to the affidavit, described the surgical procedures to be followed during a cholecystectomy, and that all such procedures were followed. In her affidavit, Dr. Perkins also stated:

> Ms. Greene also indicated that she wanted to have an abdominoplasty and liposuction performed for cosmetic reasons by her plastic surgeon, Dr. Michelle Thiet. Although I assisted with regard to that procedure, I did not perform the cosmetic surgery. The principal surgeon was Dr. Thiet.
>
> The standard of care allows for these operations to be performed together. Precautions were taken to protect the patient. Gowns and gloves were changed and the patient was redraped with clean drapes. Instruments that were used for the cholecystectomy were removed. . . .
>
> . . . .

It is further my opinion, that, with respect to the allegations of negligence made by Ms. Greene against myself, I did not negligently proximately cause any of the injuries or damages that Ms. Greene is complaining about in this lawsuit. I specifically deny that my alleged negligence (in what I did or allegedly failed to do), caused her the damages she now claims.

In making its ruling, the trial court also had before it portions of the depositions of both physicians, filed by appellees and appellant. When deposed, Dr. Thiet stated that combining a cholecystectomy with abdominoplasty/liposuction surgery is an accepted and common procedure. She also stated that, in general, an abdominoplasty with liposuction operation similar to that performed on appellant Greene takes approximately three and one half to four hours to perform. She further said that combining these procedures with a cholecystectomy would normally extend the time in surgery by whatever time it took to perform the cholecystectomy, usually fifty minutes to one hour. According to Dr. Thiet, ordinarily the operative time for the combined procedures would be between four and one half and five hours. However, Dr. Thiet testified, due to a lack of complication in this case the combined surgeries took only three hours and fifty-five minutes. Therefore, according to Dr. Thiet, both procedures were completed within the time which one would normally expect for abdominoplasty with liposuction alone. The defendants-physicians contend this evidence shows that, other than the increased of risk of infection, which all parties agree did not occur, the only possible cause of an increased risk in healing problems was the extended surgical time anticipated in the combined procedures. Since additional time was unnecessary, Drs. Thiet and Perkins contend the summary judgment affidavit and deposition testimony sufficiently negate the assertion that appellant Greene was injured by combining the surgeries, thus shifting the burden to Ms. Greene to present expert medical testimony that she was injured by the

combination of the surgeries. *Garza v. Levin*, 769 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1989, writ denied). We agree.

We initially note appellant Greene is correct in her assertion that the record contains no summary judgment evidence of what would influence a reasonable person in deciding whether to consent to a recommended medical procedure.[2] The summary judgment evidence, therefore, fails to specifically address the first component of causation in this informed consent case—that a reasonable person in the same or similar circumstances as Ms. Greene would not have consented to simultaneous surgeries had she been informed of the undisclosed risk in combining the procedures. As to the second step of the causation analysis, however, Drs. Thiet and Perkins have clearly presented evidence negating that the alleged increase in risk involved in the simultaneous performance of the surgeries, within the same time required to perform one surgery, in fact caused the necrosis. As discussed above, the summary judgment burden, of course, is on the defendants-physicians to prove conclusively that their patient was not injured by the occurrence of the risk of which she claims she was not informed. *See Jones*, 782 S.W.2d at 241.

In *Garza v. Levin*, 769 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1989, writ denied), the court of appeals upheld a defendant physician's summary judgment proof on the basis that the defendant's own affidavit adequately negated the plaintiff's allegations of negligent failure to diagnose and treat a ruptured appendix and proximate causation, and because the plaintiff's summary judgment evidence did not adequately controvert it. The defendant-physician's affidavit described his medical qualifications and described the treatment he performed in detail. *Id.* at 645. He also stated that, based on reasonable medical probability, nothing he did injured the plaintiff. *Id.* The court held that the defendant was entitled to summary judgment

based on his own uncontroverted expert testimonial evidence. *Id.* at 645–46; *see also Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 215–17 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Duncan v. Horning*, 587 S.W.2d 471, 473 (Tex.Civ.App.—Dallas 1979, no writ).

Here, the summary judgment evidence of both doctors was that combining the surgeries did not cause the injury. Their opinions were supported by evidence showing that the only possible cause of an increased risk in developing necrosis may have been the extended surgical time anticipated in the combined procedures. Since the physicians-defendants presented undisputed evidence that additional time was not necessary, we find Drs. Thiet and Perkins met their burden.

Because the defendants-physicians proof negated the second component of causation, the burden shifted to appellant Greene to produce controverting expert evidence that she developed necrosis because of an increased risk of performing the abdominoplasty and liposuction simultaneously with the cholecystectomy. Appellant Greene is not required to prove she would prevail at a trial on the merits; she need only produce evidence sufficient to raise an issue of fact with respect to the causation component negated by the movant's summary judgment evidence. *See Cloys v. Turbin*, 608 S.W.2d 697, 700 (Tex. Civ.App.—Dallas 1980, no writ). Causation in a medical malpractice case, however, must be proven by expert testimony. *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1965). The patient's personal affidavit is not considered competent controverting evidence because medical conclusions of a lay witness cannot controvert medical expert opinion. *Garza*, 769 S.W.2d at 646. Even where the patient engages a medical expert, the patient will not prevail unless the expert asserts a causal connection between the defendant's actions and the plaintiff's injuries. *Id.* Here, appellant Greene did

---

**2.** At least one appellate court has held that, except in extraordinary circumstances, inquiry into reasonable conduct is a question of fact

which precludes summary judgment. *Ridgeline, Inc. v. Crow–Gottesman–Shafer # 1*, 734 S.W.2d 114, 116–17 (Tex.App.—Austin 1987, no writ).

not present deposition or affidavit testimony of a medical expert to the effect that the combined surgeries, although performed within the time needed for one surgery, in fact caused the injury. Rather, she filed a personal affidavit in opposition to the defendants' motion for summary judgment. As such, in the absence of competent expert controverting evidence on the issue of causation, the summary judgment must be affirmed.

Moreover, we can find no testimony, even from appellant Greene, to the effect that the skin necrosis she developed was related to an increased risk inherent in combining a cholecystectomy and an abdominoplasty and liposuction if performed within the same time required to do one surgery. Regarding her alleged damages, Ms. Greene stated:

> As a result of the surgical procedures, I currently have severe and permanent scarring throughout my abdomen. Furthermore, I have been very humiliated and embarrassed to have anybody see the permanent scarring around and near my abdomen. In addition, I have lost a lot of my self esteem and confidence in myself as a result of my appearance. I have been emotionally upset and have been unable to sleep well since the surgical procedures that have left me with this permanent scarring. In addition, I have had pain on a frequent basis since the surgical procedures. Such pain has caused me great discomfort and limited my activities. In addition, my extra-curricular activities have been severely restricted in that I can no longer wear certain types of clothing or engage in certain activities because of the embarrassment and/or discomfort caused as a result of my current physical condition.

The absence of testimony regarding the causal relationship between the risks involved in the simultaneous performance of surgeries and the resulting necrosis is apparently the result of appellant Greene's contention that a patient is not required to prove the traditional negligence causal connection (between the surgery and the injuries) in an informed consent cause of action brought subsequent to the enactment of the Medical Liability and Insurance Improvement Act. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Supp.1992). In her appellate brief and during oral argument, Ms. Greene suggested that the holdings in *Barclay v. Campbell*, 704 S.W.2d 8, 9 (Tex. 1986) and *McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex.1989), as reflected in 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 51.12 (1989), eliminate the need for the patient to establish the second component of causation—the "but-for" causal connection between the undisclosed risks and the patient's injuries.[3] While it is true the court in *Barclay* and *McKinley* discussed the submission of proximate cause only as it related to whether or not the patient would have consented to the procedure, in those cases the injuries suffered by the patients were a direct and obvious consequence of the procedure performed; therefore, the second element of causation was not in issue.

In *Barclay*, a patient with mental illness was referred to the defendant physician by

---

**3.** In *McKinley*, the Texas Supreme Court held that the proximate cause issue must be framed as follows:

> [W]hether a reasonable person, not a particular plaintiff, would have refused the treatment or procedure had he been fully informed of all inherent risks which would influence his decision. Only in this way may a plaintiff establish that the failure to obtain informed consent was a proximate cause of his injuries.

763 S.W.2d at 410 (citations omitted).

The Texas Pattern Jury Charge, section 51.12, states that, when there is a dispute as to whether adequate disclosure was made, the following questions should be submitted:

*Question No. 1.*

Did (Defendant Physician's Name) fail to disclose to (Plaintiff Patient's Name) such risks and hazards inherent in (Treatment In Issue) that could have influenced a reasonable person in making a decision to give or withhold consent to such treatment?

Answer "Yes" or "No"

*Question No. 2*

If you have answered the above question "Yes", then answer the following question. Otherwise do not answer the following question.

Would a reasonable person have refused such treatment if those risks and hazards had been disclosed?

Answer "Yes" or "No".

his employer's company doctor. 704 S.W.2d at 9. During the course of treatment, the defendant prescribed certain neuroleptic drugs. In discussing the patient's injuries, the court stated:

> In a small percentage of cases, these drugs produce a condition known as tardive dyskinesia. This condition is marked by involuntary muscle movements. The evidence is undisputed that [the defendant-physician] did not warn Barclay of the risks associated with the neuroleptic drugs, and Barclay now suffers from tardive dyskinesia.

Id. Thus, because it is clear the patient suffered from tardive dyskinesia due to treatment with neuroleptic drugs, it is clear he was injured by the occurrence of the risk of which he was not informed. In this case, however, it is not clear that Ms. Greene was injured by the occurrence of the risk of which she was not informed. Ms. Greene apparently contends that she was injured by necrosis which was caused by the undisclosed increased risk of combining cholecystectomy and abdominoplasty/liposuction surgeries. In causation terminology, she contends the necrosis would not have resulted "but-for" the combination of the cholecystectomy and the abdominoplasty and liposuction procedures. She fails to address, however, the defendants-physicians' summary judgment proof negating this contention. Drs. Thiet and Perkins produced expert testimony that combining the surgeries would not have resulted in necrosis "but-for" the additional time involved in combining the two procedures; the combined surgeries were completed within the same time frame it would have taken to complete an abdominoplasty/liposuction; therefore, combining the surgeries is not a cause of the necrosis because the necrosis could have occurred without it.

■ McKinley is also instructive. 763 S.W.2d at 408. Although the specific question before the court was whether it was necessary to submit an issue on whether a reasonable person would have refused the surgery had full disclosure of risks been made, it is clear that the patient would not have suffered his injury but for the operations performed on his index finger. In fact, the court noted that the jury had found "that [the patient] had suffered limited movement as a result of the surgeries performed." Id. The court went on to state:

> An issue on proximate causation must be submitted as in ordinary negligence cases so the jury may determine whether any breach of duty caused the injuries suffered. To hold otherwise would amount to an imposition of strict liability wherein a failure to warn and an undesirable surgical result would automatically create liability on the doctor.

Id. at 409. Were we to accept appellant Greene's argument, and hold that a patient need only prove that she would not have consented to the treatment had she been informed of the undisclosed risk, we would, in effect, impose strict liability upon the treating physician contrary to McKinley. To do so would be to give appellant Greene a cause of action for lack of informed consent even if the results of her surgeries had been positive. We do not believe the legislature intended such a result. Rather, we believe the purpose of the disclosure rule is to protect the patient only against those results that, (1) if known, the patient would have avoided by foregoing the treatment, and, (2) because of not foregoing the treatment, an injury resulted.

■ For many years, Texas courts discussed the failure to disclose risks inherent in medical and surgical procedures in terms of assault and battery. Wilson v. Scott, 412 S.W.2d 299, 302 (Tex.1967). In battery cases, the damages extend to the injuries which result from an unpermitted touching. Page Keeton, A Study of Medical Malpractice in Texas, 7 St. Mary's L.J. 732, 755 (1976). Thus, in an informed consent case brought under a battery theory of recovery, a patient need only prove the treating physician's failure to disclose a risk involved, thereby invalidating any consent to treatment given. Id. There was no necessity that the patient prove a bad result from the treatment. Id.

Article 4590i of the Medical Liability and Insurance Improvement Act provides that, in informed consent cases, "the only theory on which recovery may be obtained is that of negligence...." TEX.REV. CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon 1992 Supp.). When interpreting this statute, in *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex.1989), the Texas Supreme Court held that "[i]t is clear from the language of this statute that an action alleging a physician's failure to obtain a patient's informed consent is a suit based on negligence." Moreover, the court found that:

> Traditional notions of liability in negligence actions require a finding of a duty, a breach of that duty, the breach was a proximate cause of injuries, and that damages occurred. A medical procedure informed consent case does not differ merely because a statute imposes the duty of disclosure.

*Id.* (citation omitted). It is clear from this language that informed consent questions are no longer to be decided in terms of assault and battery. Rather, the law is that these cases are to be based upon a negligence theory of recovery. In ordinary medical malpractice cases based upon negligence, there are numerous instances where appellate courts have affirmed summary judgments by focusing on proof establishing that the injury suffered by the patient was not caused by negligence, but instead represented a common complication of a type of treatment or particular condition. *See e.g., Pinckley v. Gallegos*, 740 S.W.2d 529, 530–32 (Tex.App.—San Antonio 1987, writ denied) (evidence conclusively established that appellant's injury was common complication of type of surgery she underwent and was not attributable to negligence by physician); *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 751 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (proximate cause element of claim against hospital conclusively disproven by expert testimony that infection in jaw originated from bacteria normally present in patient's mouth); *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ) (uncontroverted evidence demonstrated no breach of duty to protect patient from infection and that meningitis developed by patient was recognized complication of brain surgery which can develop despite following proper procedures). Applying this negligence theory to a statutory informed consent case, the patient should be able to recover only for the injuries attributable to the undisclosed risk. In order to adhere to appellant Greene's argument, we would be required to return the doctrine of informed consent to its origins in the law of battery contrary to present statutory and case law. *See* Page Keeton, *A Study of Medical Malpractice in Texas*, 7 ST. MARY'S L.J. 732, 755 (1976). We think a proper statement of the "causation in fact" issue in this type of case is stated by Jim Perdue and Paula Sweeney in *Medical Malpractice and Hospital Liability Law in Texas–Plaintiff's Perspective*, ADVANCED PERSONAL INJURY LAW COURSE (1992) at pages G–259 to G–261.

Additionally, when faced with similar arguments subsequent to the enactment of article 4590i, at least one Texas appellate court has reached the same conclusion as this court and required the patient to establish a causal connection between the undisclosed risks and the injuries suffered. In *Jones v. Papp*, 782 S.W.2d 236, 241 (Tex. App.—Houston [14th Dist.] 1989, writ denied), summary judgment for a cardiologist in an informed consent case was affirmed. Citing *Hartfiel v. Owen*, 618 S.W.2d 902, 905 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e), the court held that, in an informed consent case, the patient must prove that he was not informed of the inherent risk, that he would not have consented to the procedure had he been informed, and that he was injured by the occurrence of the risk of which he was not informed. *Id.* at 240–41. Specifically, the court found:

> As to the inherent risk of allergic sensitivity reaction to the dye, the summary judgment evidence, based upon the depositions of [the defendants-physicians] ... establishes conclusively that [the patient] did not sustain injury from the inherent risk of allergic sensitivity reaction to the

dye for the reason that this risk did not occur.

*Id.* In *Hartfiel*, the court discussed nondisclosure of risk and causation of injury and concluded:

> The theory of informed consent is based on negligence and a plaintiff may not recover unless he proves *both* that he would not have consented to the treatment had he been informed of the undisclosed risk *and that he was injured by the occurrence of the risk of which he was not informed.*

618 S.W.2d at 905 (emphasis added) (citations omitted).

Appellant Greene argues *Hartfiel* is distinguishable from the case at bar because it involved "medical procedures performed before the effective date of the act and because it was not a summary judgment appeal, but an appeal from an adverse jury verdict." Based upon the discussion above, we find neither argument persuasive.

In conclusion, we hold that, in informed consent cases when moving for summary judgment, the defendant-physician has the burden to negate at least one of the following components of the causation element of the patient's cause of action: (1) a reasonable person in the same or similar circumstances as the plaintiff would not have chosen to have the surgery had she been informed of the undisclosed risks or (2) the plaintiff was injured by the occurrence of the risk of which she was not informed. In this case, we hold the defendant-physicians, Drs. Thiet and Perkins, produced sufficient summary judgment as to the "but-for" component of causation discussed above, shifting the burden to appellant Greene to produce controverting expert medical summary judgment evidence. Because Ms. Greene did not produce competent expert controverting evidence to create an issue of fact, the trial court correctly granted the summary judgment.

Accordingly, the judgment of the trial court is affirmed.