

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00590-CV

John R. **HALL**, D.O. and South Texas Spinal Clinic, P.A.,
Appellants

v.

Julian **VASQUEZ**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-22025
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: February 13, 2019

REVERSED AND REMANDED

This is an interlocutory appeal from the denial of a motion to dismiss a medical negligence suit. Appellants John R. Hall, D.O. and South Texas Spinal Clinic, P.A. were sued after Julian Vasquez developed complications from a cervical epidural steroid injection performed by Dr. Hall. In a single issue, Dr. Hall argues the trial court should have dismissed the suit because the accompanying expert report was conclusory on the issue of causation. We reverse the trial court's order and remand the cause to the trial court for further proceedings consistent with this opinion.

**BACKGROUND**

Vasquez filed a medical negligence suit against Dr. Hall and South Texas Spinal Clinic, PA ("STSC") along with an expert report. According to Vasquez's first amended petition and the expert report, Dr. Hall performed an elective cervical epidural steroid injection ("CESI") at the C6-C7 level on Vasquez at STSC. Dr. Hall injected Vasquez with 2 cc of Marcaine, 80 mg of Depo Medrol, and 7cc of saline. Later that day, Vasquez began to experience muscle weakness and lethargy. He was rushed to Southwest General Hospital where he complained of pain in his back, arms, legs, and neck. He was discharged without treatment. Vasquez was then taken to Methodist Hospital, where he underwent a cervical and thoracic MRI which revealed a spinal hematoma extending from C5-C6 through T2-T3. The next day, he underwent a laminectomy at C7-T1 with evacuation of the spinal hematoma and decompression of the spinal cord. The hematoma caused irreparable spinal cord damage, resulting in permanent neurological injuries and requiring the use of catheters to urinate.

The petition alleges Dr. Hall was negligent (1) in performing the cervical epidural steroid injection with Depo Medrol because Depo Medrol contains particulates which can get into the medullary vessels and cause a spinal cord infarction or cerebellar infarction and (2) in not informing Vasquez of the dangers involved with performing a cervical epidural steroid injection with Depo Medrol and obtaining the patient's informed consent prior to the procedure. The expert report was prepared by Dr. Robert H. Odell, Jr., an anesthesiologist who opined that "Dr. Hall should never have performed a CESI with Depo Medrol as it is not an accepted medical procedure due its extreme risk." He went on to opine that, "[t]he standard of care applicable to an anesthesiologist performing a CESI . . . requires them to use a particulate free steroid instead of particulate steroids. Particulate steroids are not used because the particulates can get into the medullary vessels and cause a spinal cord infarction or cerebellar infarction." Dr. Odell continued,

stating, "Dr. Hall should have warned Mr. Vasquez that the procedure itself was not a medically accepted procedure" and that the "medical records indicate no documentation that Mr. Vasquez specifically consented to being injected with Depo Medrol or that he was informed about the risks specifically associated with being injected with Depo Medrol." Dr. Odell went on to explain that "[i]f Dr. Hall had not performed the CESI on Mr. Vasquez, the hematoma would not have occurred." Dr. Odell concluded by stating "the Depo Medrol itself did not cause the hematoma."

Dr. Hall and STSC objected to the expert report and filed a motion to dismiss Vasquez's claims against them. The motion to dismiss was denied by the trial court. This interlocutory appeal followed.

## DISCUSSION

On appeal, Dr. Hall and STSC argue the trial court abused its discretion in denying the motion to dismiss because Dr. Odell's expert report failed to show a causal relationship between Dr. Hall's alleged breach of the standard of care and Vasquez's injuries.

### *Standard of Review*

We review the trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *Abshire v. Christus Health Se. Texas*, 563 S.W.3d 219, 223 (Tex. 2018); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

### *Applicable Law*

#### A. Expert Report Requirements under Chapter 74

The Texas Medical Liability Act requires a party asserting a healthcare liability claim to file an expert report and serve it on each party not later than 120 days after the petition is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Under section 74.351 of the Texas Civil Practice and Remedies Code, "[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). Under section (r)(6), an expert report means "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). To constitute an objective good faith effort, the expert report must fulfill the two-part test articulated by the Texas Supreme Court. *Palacios*, 46 S.W.3d at 879 (construing former art. 4590i, § 13.01). Under this test, the report must provide enough information to (1) inform the defendant of the specific conduct the plaintiff has called in to question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Id.* The report need not marshal all the plaintiff's proof or meet the requirements for evidence offered at trial or to support a summary judgment, but a report that merely states the expert's conclusions about the standard of care, breach, and causation falls short of accomplishing these two purposes. *Id.* at 878-79.

### B. Causation Requirement

The Texas Supreme Court has held that "a plaintiff asserting a health care liability claim based on negligence, who cannot prove that her injury was proximately caused by the defendant's failure to meet applicable standards of care, does not have a meritorious claim." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). As such, a plaintiff asserting a health care liability claim must submit an expert report that sufficiently "explain[s], based on facts set out in the report, how and why the breach caused the injury." *Van Ness v. ETMC*

*First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *accord Zamarripa*, 526 S.W.3d at 460. The report does not have to prove proximate cause, but the expert cannot simply opine that the breach caused the injury. *Zamarripa*, 526 S.W.3d at 460; *Van Ness*, 461 S.W.3d at 142. "Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury" by linking the defendant's alleged failures to the plaintiff's injury. *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010); *see also Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.) (noting expert report must explain causal connection between claimed omissions and injury). And although there are no "magic words" to establish causation, "the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven." *Zamarripa*, 526 S.W.3d at 460.

In evaluating expert reports at this preliminary stage, courts look only to the information provided within the four corners of the report. *Palacios*, 46 S.W.3d at 878. Courts are precluded from filling gaps in the reports by drawing inferences or guessing as to what the expert likely meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

### Application

Dr. Hall and STSC argue Dr. Odell's report is deficient as a matter of law because it fails to establish a causal link between Dr. Hall's conduct and Vasquez's injuries.

Dr. Odell identified two breaches of the standard of care in his report. First, he opined that Dr. Hall was negligent in performing the cervical epidural steroid injection with Depo Medrol because Depo Medrol contains particulates which can get into the medullary vessels and cause a spinal cord infarction or cerebellar infarction. Vasquez did not suffer a spinal cord infarction or cerebellar infarction. Instead, he suffered a cervical epidural hematoma. Dr. Odell conceded in his report that "the Depo Medrol itself did not cause the hematoma." Given this blatant admission,

we hold the report fails to explain how the use of Depo Medrol caused Vasquez to sustain a cervical epidural hematoma. *See Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.—San Antonio 2004, no pet.) (holding the trial court properly dismissed a healthcare liability claim when the expert's report did not set forth facts or explain the medical basis for her opinion that the doctor's breaches caused the patient's injury); *Lopez v. Montemayor*, 131 S.W.3d 54, 60 (Tex. App.—San Antonio 2003, pet. denied) (holding that an expert's opinion was conclusory and did not fulfill statutory causation requirements when it did not provide information linking the doctor's actions to the patient's death).

Second, Vasquez alleged that Dr. Hall was negligent in failing to inform Vasquez of the dangers involved with performing a cervical epidural steroid injection with Depo Medrol and to obtain the patient's informed consent prior to the procedure. A defendant-physician's failure to disclose is not a cause of the patient's injury, however, if the patient was not injured by the occurrence of the risk of which he was not informed. *Greene v. Thiet*, 846 S.W.2d 26, 30 (Tex. App.—San Antonio 1992, writ denied). Here, Dr. Odell unambiguously conceded in his report that Vasquez's injury—the hematoma—was not caused by the administration of Depo Medrol. Given that Depo Medrol was not the cause of Vasquez's injury, Dr. Odell cannot explain how the failure to warn Vasquez of the dangers involved with performing a CESI with Depo Medrol caused the hematoma. *See id.* at 30-31.

Ultimately, Dr. Odell's report does not explain how Dr. Hall's acts and/or omissions were a substantial factor in bringing about the harm allegedly suffered by Vasquez. Because the expert report fails to sufficiently explain the causation element of Vasquez's health care liability claim, we conclude the trial court abused its discretion in denying the motion to dismiss.

When an expert report is deficient, but curable, a plaintiff should be given an opportunity to cure the deficient report. *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011). Dr. Hall and

STSC argue Vasquez's claims should be dismissed with prejudice because the report is so deficient as to be incurable; alternatively, they argue we should reverse the trial court's denial of the motion to dismiss and remand to the trial court for a determination as to whether Vasquez is entitled to a thirty-day extension to file an amended expert report. The Texas Medical Liability Act allows a trial court to grant one thirty-day extension to cure a deficiency in an expert report, and a court must grant an extension if a report's deficiencies can be cured. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Zamarripa*, 526 S.W.3d at 461. In response to Dr. Hall's objections to Dr. Odell's expert report and motion to dismiss, Vasquez asserted Dr. Odell's report satisfied the requirements of chapter 74 but requested that if the report was found to be deficient, the trial court grant a thirty-day extension of time under section 74.351(c) to cure any deficiency. We have concluded Dr. Odell's expert report was deficient because it did not contain a fair summary of the basis of his opinion concerning the statutory element of causation. Because Vasquez has not been given an opportunity to cure the deficiency regarding causation in Dr. Odell's report, and because Dr. Odell's report is not so deficient as to constitute no report at all, *see Scoresby*, 346 S.W.3d at 551, 556, the trial court must be given an opportunity to consider whether to grant Vasquez a thirty-day extension to cure the deficiency. *See Zamarripa*, 526 S.W.3d at 461.

## CONCLUSION

Because the expert report fails to sufficiently explain the causation element of Vasquez's health care liability claim, the trial court abused its discretion in denying the motion to dismiss. We therefore reverse the trial court's order denying the motion to dismiss and remand the cause to the trial court for further proceedings consistent with this opinion.

Rebeca C. Martinez, Justice