Aaron **FELTON**, Petitioner,

v.

Brock **LOVETT**, D.C., Respondent.

No. 11–0252.

Supreme Court of Texas.

Argued Sept. 13, 2012.

Decided Nov. 30, 2012.

**658**

Ronald D. Nickum, Amarillo, TX, for Baptist St. Anthony's Hospital.

Charles Dunn, Law Office of Charles Dunn, Lubbock, TX, Cynthia Hollings-worth, Nona Bowles Walker, Hollings-worth Walker LLP, Dallas, TX, for Aaron Felton.

Barry D. Peterson, Liberty Dawn Lay, Peterson Farris & Parker, P.C., Amarillo, TX, Scott P. Stolley, Thompson & Knight LLP, Dallas TX, for Brock Lovett, D.C.

Justice HECHT delivered the opinion of the Court.

Health care must be based on a patient's informed consent. A health care provider may be liable for failing to disclose to a patient the risks inherent in proposed treatment. The issue in this case is whether the possibility that a patient, due to an undetectable physical condition, will suffer a severe, negative reaction to a procedure is a risk that is inherent in the procedure. We hold that it is and therefore reverse the court of appeals' judgment[1] for respondent and remand the case to the court of appeals.

Aaron Felton sought treatment for neck pain from Brock Lovett, a doctor of chiropractic. Lovett obtained a history, x-rayed Felton's cervical spine, and on two occasions, manipulated his neck. When the treatments did not provide relief, Lovett performed a more forceful manipulation on Felton's third visit. Felton immediately began experiencing blurred vision, nausea, and dizziness. Lovett called an ambulance, which took Felton to the hospital, where doctors determined that he had suffered a stroke resulting from a vertebral artery dissection.

Lovett was well aware of the risk of stroke from chiropractic neck manipulation. Just that morning, he had been reading an article on the subject. And, he previously had a patient who suffered a vertebral dissection.

---

1. 333 S.W.3d 389 (Tex.App.-Amarillo 2011).

Felton sued, alleging that Lovett had failed to disclose the risks associated with the neck manipulations and was negligent in treating him.

At trial, Felton offered expert testimony that:

· vertebral artery dissection is a known risk of neck adjustments but occurs only if the patient's artery is unhealthy or if the adjustment is performed improperly;

· chiropractors have been aware of the risk for a long time;

· there are safer alternatives to manual adjustment that do not run the risk of stroke;

· about 10 to 20% of vertebral dissections are preceded by chiropractic manipulation of the spine;

· it was "much more likely than not" that Felton's vertebral dissection resulted from Lovett's chiropractic treatment;

· the standard of care calls for a chiropractor to inform a patient of the risks associated with neck adjustments; and

· Lovett breached this standard of care by not disclosing to Felton the risk of vertebral artery dissection.

Lovett's expert testimony was to the contrary.

The jury failed to find that Lovett's "negligence ... proximately cause[d] the injury in question", but found, in answer to three other questions, that:

· "Lovett fail[ed] to disclose to [Felton] such risks and hazards inherent in the chiropractic treatment that could have influenced a reasonable person in making a decision to give or withhold consent to such treatment";

· "a reasonable person [would] have refused such treatment if those risks and hazards had been disclosed"; and

· "Felton [was] injured by the occurrence of the risk or hazard of which he was not informed."

Based on the verdict, the trial court rendered judgment awarding Felton $742,-701.90—the damages found by the jury, less offsets, plus prejudgment interest.

■ Lovett appealed. For the law governing Felton's claim for lack of informed consent, the court of appeals looked to Section 74.101 of the Medical Liability Act ("MLA"),[2] which states:

*In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider*, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.[3]

This is the theory the trial court submitted to the jury at Felton's request and without objection.[4] But as Lovett argues, under the MLA, while a chiropractor is a "health care provider",[5] he is not a physician,[6] and "medical care" can be provided only by

---

2. *Id.* at 390–391.

3. Tex. Civ. Prac. & Rem.Code § 74.101 (emphasis added).

4. *See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges PJC 51.10 (2008).

5. Tex. Civ. Prac. & Rem.Code § 74.001(a)(12)(A) (defining "health care provider" to include a chiropractor but not a physician).

6. *Id.* § 74.001(a)(23) (" 'Physician' means ... an individual licensed to practice medicine in this state [and certain entities].").

physicians.[7] Also, Lovett did not (and legally could not[8]) perform surgery. Thus, Felton's suit was not based on a failure to disclose the risks of "medical care or surgical procedure" and was not covered by Section 74.101.[9]

But when Section 74.101 does not apply, the common law does.[10] It imposes on "[p]hysicians and surgeons [the] duty to make a reasonable disclosure to a patient of risks that are incident to medical diagnosis and treatment."[11] Chiropractors in Texas have long been held to a standard of ordinary care—that of a reasonable chiropractor[12]—including the duty to reasonably disclose risks of treatment.[13] Lovett argues that the common law's focus on what a reasonable health care provider would disclose is materially different from the statute's focus on what a reasonable patient would want to know,[14] and that this difference makes the jury's findings that the statutory duty was breached immaterial to whether the common-law duty was breached. We agree that "the common law focus[es] on the physician, rather than

---

**7.** *Id.* § 74.001(a)(19) (" 'Medical care' means any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state . . . ."); *see* Tex. Occ. Code § 151.002(13) (" 'Practicing medicine' means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who: (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services.").

**8.** *Id.* § 201.002(b) ("A person practices chiropractic . . . if the person . . . (2) performs nonsurgical, nonincisive procedures, including adjustment and manipulation. . . .").

**9.** The court of appeals refused to consider Lovett's argument because "he did not raise this theory prior to trial." 333 S.W.3d 389, 390 n. 1 (Tex.App.-Amarillo 2011). But a purely legal issue which does not affect the jury's role as fact-finder, raised for the first time post-verdict, may preserve error. *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 802 (Tex.2010); *Hoffmann–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 450 (Tex.2004); *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex.1999).

**10.** Whether a statute modifies or abrogates the common law depends on legislative intent. *Energy Serv. Co. v. Superior Snubbing Servs., Inc.,* 236 S.W.3d 190, 194 (Tex.2007).

Section 74.101 does not purport to affect the common law in cases other than those the statute covers, and nothing in the MLA suggests a different intent.

**11.** *Wilson v. Scott,* 412 S.W.2d 299, 301 (Tex. 1967).

**12.** *See Nicodeme v. Bailey,* 243 S.W.2d 397, 401 (Tex.Civ.App.-El Paso 1951, writ ref'd n.r.e.); Tex. Civ. Prac. & Rem.Code § 74.402(b) ("In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person: (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider . . .; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.").

**13.** *See Hartfiel v. Owen,* 618 S.W.2d 902, 905 (Tex.Civ.App.-El Paso 1981, writ ref'd n.r.e.). This appears to be the majority, though not universal, rule in the country. *See* Annotation, *Liability of Chiropractors and Other Drugless Practitioners for Medical Malpractice,* 77 A.L.R.4th 273 § 14 (1989).

**14.** *Compare* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges

the patient",[15] as the statute does, but we disagree that this difference is material in assessing liability.

 The common-law duty is based upon the patient's right to information adequate for him to exercise an informed consent to or refusal of the procedure. The nature and extent of the disclosure depends upon the medical problem as well as the patient. In some medical procedures the dangers are great; in others they are minimal. It has been suggested that some disclosures may so disturb the patient that they serve as hindrances to needed treatment. Certain disclosures in some instances may even be bad medical practice.[16]

In sum, a reasonable health care provider must disclose the risks that would influence a reasonable patient in deciding whether to undergo treatment but not those that would be unduly disturbing to an unreasonable patient. The common-law duty was defined not only for a school of practice but for a community, and the statutory duty abandons the latter factor—the "locality rule".[17] The abandonment is not based on principle as much as the recognition that standards of health care have ceased to be a matter of local practice, and for the same reason, it is doubtful whether

the "locality rule" survives for the common law. In any event, no one argues in this case that the standard of care for Lovett, practicing in Amarillo, was different from that for chiropractors in other parts of the state. In this case, certainly, and probably in all cases, the common-law and statutory duties are congruent.[18]

Both require disclosure of risks "inherent" in treatment.[19] An inherent risk, as the court of appeals in this case noted, is one that "exists in and is inseparable from the procedure itself".[20] Pointing to the testimony of Felton's own expert that Lovett's manipulation could not have caused a vertebral artery dissection unless Felton's artery was unhealthy or the manipulation was done improperly, the court reasoned that the risk arose "only when some other factor or condition was present" and "did not exist in the procedure itself[,] nor was it inseparable from the procedure." [21] "Simply put," the court concluded, the risk of a vertebral artery dissection was not inherent in the procedure Lovett performed.[22] Accordingly, the court reversed judgment for Felton and rendered judgment for Lovett.[23]

We granted Felton's petition for review.[24]

 Health care gives few guarantees; usually there is a risk—commonly

---

PJC 51.09 (2008) (common-law claim) *with id.* PJC 51.10 (statutory claim).

**15.** *Peterson v. Shields,* 652 S.W.2d 929, 930 (Tex.1983).

**16.** *Wilson,* 412 S.W.2d at 301 (internal citations omitted).

**17.** *Peterson,* 652 S.W.2d at 931 (construing the MLA's predecessor, Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 6.02, 1977 Tex. Gen. Laws 2039, 2050, formerly Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.02 (Vernon 1977)).

**18.** Of course, the jury charge for a statutory claim should track the statutory language.

*Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994).

**19.** *Compare Wilson,* 412 S.W.2d at 306 (common-law duty) *with Barclay v. Campbell,* 704 S.W.2d 8, 9 (Tex.1986) (statutory duty).

**20.** 333 S.W.3d 389, 391 (Tex.App.-Amarillo 2011) (citing *Barclay,* 704 S.W.2d at 10).

**21.** 333 S.W.3d at 391–392.

**22.** *Id.* at 392.

**23.** *Id.*

**24.** Tex. Sup.Ct. J. (Feb. 17, 2012).

defined as a "chance of injury"[25]—even if treatment is proper and properly administered. Such a risk is inherent in health care. Other risks are extraneous. Malpractice, for example, is an extraneous risk, one that inheres in the *practice* of health care, not in the care itself.[26] Thus, the inherent risks of surgery do not include the possibility that it may be based on an erroneous diagnosis or prognosis,[27] or that it is negligently performed.[28] Another example is the risk that a drug used in treatment may be defective; that risk inheres in the drug's manufacture, not in its use in treatment.[29] On the other hand, the risk that surgery may result in injury, even if properly performed, is inherent in the procedure itself. An example is cutting or traumatizing a nerve adherent to a lymph gland being biopsied.[30] Inherent risks of treatment are those which are directly related to the treatment and occur without negligence.[31] They do not include eventualities or non-treatment-specific in-

juries, such as the possibility of hospital infections, or complications which occur without particular regard to the treatment the patient receives. They do include side effects and reactions, whether likely or only possible, that are directly related to the treatment provided. The MLA charges the Texas Medical Disclosure Panel with the responsibility "to determine which ... treatments and procedures do and do not require disclosure of the risks and hazards".[32] The Panel's lengthy lists of procedures for which disclosure either must or need not be made, and of the risks that must be disclosed,[33] largely define the scope of the statutory duty to disclose and inform the scope of the common-law duty.

■ The court of appeals concluded that because, by the undisputed evidence, Felton's injury would not have occurred but for his own physical condition—an unhealthy vertebral artery—the risk could not have been inherent in Lovett's treat-

**25.** BLACK'S LAW DICTIONARY 1442 (9th ed.2009); *accord* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1961 (3d ed.2002) ("the possibility of loss, injury").

**26.** *Binur v. Jacobo*, 135 S.W.3d 646, 655 (Tex. 2004).

**27.** *Id.*

**28.** *See Tajchman v. Giller*, 938 S.W.2d 95, 99–100 (Tex.App.-Dallas 1996, writ denied) (negligently cutting a vein is not an inherent risk of depth electrode placement procedure); *Jones v. Papp*, 782 S.W.2d 236, 240 (Tex.App.-Houston [14th Dist.] 1989, writ denied) (surgical intervention is not an inherent risk of the diagnostic procedure of a coronary angiography).

**29.** *Barclay v. Campbell*, 704 S.W.2d 8, 10 (Tex.1986).

**30.** *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983).

**31.** *Cf. Scientific Image Ctr. Mgmt., Inc. v. Brewer*, 282 S.W.3d 233, 239 (Tex.App.-Dallas

2009, no pet.) (poor healing is an inherent risk of reconstructive surgery); *Knoll v. Neblett*, 966 S.W.2d 622, 628–629 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (postoperative worsening pain, numbness, weakness, bladder and bowel problems, paralysis, spinal fluid leak and infection, and hematoma are inherent risks of laser lumbar laminectomy); *Beal v. Hamilton*, 712 S.W.2d 873, 877 (Tex.App.-Houston [1st Dist.] 1986, no writ) (thrombophlebitis is an inherent risk of taking the estrogen drug Premarin).

**32.** TEX. CIV. PRAC. & REM.CODE § 74.103.

**33.** 25 Tex. Admin. Code § 601.1–.3. When a procedure has not been addressed by the Panel, as is the case with the chiropractic treatment performed by Lovett, the provider must still comply with the common-law duty to inform patients of risks "inherent" in the procedure to be performed. TEX. CIV. PRAC. & REM.CODE § 74.106(b); *see Binur v. Jacobo*, 135 S.W.3d 646, 654 (Tex.2004).

ment.[34] But this ignores the evidence that Felton's injury also would not have occurred but for Lovett's treatment, that chiropractic neck manipulation can result in vertebral artery dissection and does so in a significant number of cases, and that dissection and stroke are known risks of chiropractic treatment that should be disclosed. Felton's injury occurred during treatment, as a direct result of treatment. The same kind of injury may occur in other patients undergoing the same kind of treatment. The risk that a patient will not respond well to treatment is clearly one that inheres in the treatment. And as the evidence indicated, and the jury found, the possibility of vertebral artery dissection and stroke is precisely the kind of information a reasonable patient would be expected to want to know before deciding whether to risk such severe consequences in order to alleviate neck pain.

■ Lovett argues that the jury's failure to find that his negligence caused Felton's injury precludes liability for nondisclosure of the risks of treatment, or at least conflicts with the jury's finding of nondisclosure. But as we have explained, the jury's nondisclosure finding—that "Lovett fail[ed] to disclose ... such risks and hazards inherent in the chiropractic treatment that could have influenced a reasonable person in making a decision to give or withhold consent to such treatment"— amounted to a finding of nondisclosure, the statutory and common-law causes of action being essentially the same. Failures to disclose what a reasonable patient should know, and what a reasonable care provider would disclose, are both negligence. As for any conflict in the jury's answers, it must be reconciled "if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole."[35] Whether Lovett was negligent in his treatment of Felton is a distinct legal question from whether Lovett was negligent in failing to disclose the risks of treatment to Felton.[36] We think it sufficiently clear from the charge that the jury was to consider the specific questions on disclosure separately from the more general question on negligence.

We therefore reverse the judgment of the court of appeals. Issues remain for that court to address, and we remand the case for it to do so.

Justice JOHNSON did not participate in the decision.

---

**34.** 333 S.W.3d 389, 391–392 (Tex.App.-Amarillo 2011).

**35.** *Bender v. S. Pac. Transp. Co.,* 600 S.W.2d 257, 260 (Tex.1980).

**36.** *Compare* TEX. CIV. PRAC. & REM.CODE § 74.001 (negligence in treatment) *with Wilson v. Scott,* 412 S.W.2d 299, 301 (Tex.1967) (nondisclosure).