**Opinion issued November 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-12-00578-CV

————————————————

**JIM P. BENGE, M.D., AND KELSEY-SEYBOLD MEDICAL GROUP, PLLC, Appellants**

**V.**

**LAUREN WILLIAMS, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-52657**

---

## DISSENTING OPINION

I respectfully dissent. This is a simple medical negligence case in which a

patient recovered damages for physical pain and suffering, mental anguish, and lost

earnings against her gynecological surgeon for professional negligence in performing her laparoscopic-assisted vaginal hysterectomy ("LAVH"). Yet the majority takes an element of the proof of professional negligence—the defendant-surgeon's failure to tell the patient that he was turning over half of her surgery to an unqualified co-surgeon he was supervising—and turns this fact into an unpled and invalid theory of recovery, not submitted to the jury, but on which the majority presumes damages to have been awarded anyway.

The majority concludes that the unpled theory of recovery arose from the Texas Supreme Court's decision in *Felton v. Lovett*,[1] which defines the scope of a physician's duty to disclose the risks of medical procedures under the Medical Liability Act ("MLA"), and it reforms the plaintiff's general negligence case to include it. It further concludes that this theory of recovery is entirely separate from professional negligence, that evidence of failure to disclose the use of an unqualified co-surgeon is not evidence of professional negligence, and that this evidence cannot be used to show that a physician committed professional negligence. Finally, it determines that the trial court's *failure* to submit this invalid theory of recovery to the jury, and its failure to instruct the jury to disregard the evidence of what the defendant physician told the patient, is reversible error because it allowed the jury to award damages based solely or primarily on the

---

[1] 388 S.W.3d 656 (Tex. 2012).

invalid theory of recovery of damages in violation of *Crown Life Insurance Co v. Casteel*.[2]  Therefore, it orders that the case be remanded to be retried *without the invalid theory that was neither pled nor submitted* to the jury.  It also orders that the case be retried (1) without evidence that the defendant surgeon failed to tell his patient that he would be turning over the surgery on one side of her body to an unqualified resident physician he was supervising who had never done an LAVH and (2) without expert testimony that failure to disclose the use of an unqualified co-surgeon is a breach of a surgeon's standard of care.

In my view, the majority finds jury charge error where there was none; finds that the alleged error was preserved when it was not; mistakenly confuses *evidence* of medical negligence with a *separate cause of action*; misapprehends and misconstrues the plaintiff's case; misapplies the Texas Supreme Court's holding in *Felton*, creating and injecting into the case a new theory of liability which it acknowledges is both invalid and unpled; greatly expands the concept of jury charge error requiring reversal of a judgment for an invalid element of damages under *Casteel*; and, ultimately, denies the plaintiff her right to submit material evidence going to proof of her claim that the defendant-physician breached the

---

[2]     22 S.W.3d 378, 389 (Tex. 2000) (holding that when single broad-form liability question erroneously commingles valid and invalid liability theories and appellant's objection is timely and specific, error is harmful when appellate court cannot determine whether improperly submitted theories formed sole basis for jury's finding).

3

professional standard of care of a gynecological surgeon performing her operation. Because I believe the majority opinion lays the groundwork for dangerous judicial overreach in overturning properly decided cases, I must dissent.

## The Parties' Arguments

Appellee Lauren Williams sued appellants Jim P. Benge, M.D., and Kelsey-Seybold Medical Group, PLLC, for medical malpractice, alleging breach of the standard of professional care of a physician performing an LAVH. Williams argued that Dr. Benge committed professional negligence in performing her LAVH by turning over half the surgery to a resident physician, Dr. Giacobbe, who had never done an LAVH operation, greatly increasing the risk of the operation, without telling Williams that his co-surgeon was inexperienced and unqualified, with the foreseeable result that the resident pierced Williams' bowel, causing severe life-long injuries.

During the trial, Dr. Benge's counsel insisted that Williams was *really* arguing not only that Dr. Benge had breached the standard of care of a physician performing LAVH surgery—which she had pled—but also that he had breached a non-existent statutory duty of a physician to disclose that he was using an assistant—a liability theory Williams had *not* pled and with which she did not agree. Instead, Williams argued and produced evidence that Dr. Benge had used Dr. Giacobbe not as an assistant but as a co-surgeon, that he did not tell Williams

4

he was using Dr. Giacobbe, and that his actions violated the professional standard of care. Thus, in my view, Williams created questions for the jury as to whether Dr. Benge used Dr. Giacobbe as an undisclosed and unqualified co-surgeon and whether, if he did, his use of Dr. Giacobbe as co-surgeon and his failure to disclose to Williams his intended use of an unqualified co-surgeon were acts of professional negligence.

Nevertheless, at the charge conference, Dr. Benge objected to the jury charge on the ground that the single broad-form jury question on professional negligence submitted to the jury allowed it to find liability based on breach of the statutory duty to disclose and obtain the patient's informed consent and that "that theory was unsupported by the pleadings or the evidence." The trial court overruled the objection. Dr. Benge also requested, in writing, an instruction to the jury that they were not to consider "what the defendant told, or did not tell, the plaintiff about the resident physician's being involved with the surgery." The court refused the instruction.

The case was submitted to the jury on a single broad-form negligence question of liability. The jury found that Dr. Benge was negligent and awarded Williams damages for mental pain and anguish, lost earning capacity, physical impairment, and medical expenses.

5

On appeal, Dr. Benge argues that the jury's award of damages to Williams for his medical negligence was based, solely or primarily, on the invalid theory that he had a statutory duty to disclose the use of a resident assistant, which he did not have. And he argues that the trial court's error in allowing the jury to consider evidence relating to this invalid theory of recovery as evidence of his medical negligence so contaminated the jury's damage award that the case must be reversed and retried.

The majority accepts all of Dr. Benge's arguments and reverses and remands the case. I do not accept them. I find them to be internally self-contradictory and also contradictory to the pleadings, the record, the charge, and the law. I do not agree with Dr. Benge that he has successfully injected an invalid theory of recovery into the case, preserved error as to its omission from the charge, succeeded in having the theory considered by the jury despite its omission from the charge, and is entitled to a new trial without the omitted theory—and without the evidence of malpractice it actually constitutes—because it was invalid and should not have been considered by the jury.

I find no error in the charge and ample evidence to support the jury's verdict holding Dr. Benge liable to Williams for malpractice and awarding her damages for his breach of the duty of care of an ordinarily prudent physician performing an LAVH operation. I agree with the majority that Williams' expert, Dr. Patsner, was

6

eminently qualified to testify and that the trial court did not err in admitting his testimony on the standard of care of a physician performing a hysterectomy. Therefore, I would affirm the judgment of the trial court.

**Background**

*A.    The Trial*

This is a case in which a patient, Williams, went to the hospital because of painful menstrual problems to have an elective LAVH performed by a surgeon she trusted and had used before, Dr. Benge, and left the operating table with severe, lifelong medical injuries.  Dr. Benge's own expert testified that he had "not personally" ever seen a patient have an outcome as bad as Williams' from an LAVH.  Williams' expert, Dr. Patsner, testified, "She is actually the worst outcome I've ever seen after this operation in 30 years of taking care of patients with this, short of—short of dying."

The undisputed evidence shows that Dr. Benge allowed a resident physician, Dr. Giacobbe, to perform all of the surgery on the left side of Williams' body, even though he knew that she had never performed surgery of this type before.  Both Dr. Benge and Dr. Giacobbe testified that Dr. Giacobbe performed 40% of the surgery, but the medical form signed by Dr. Giacobbe after the procedure stated that she was the "surgeon," which meant that she performed 50% or more.   There was conflicting evidence as to whether Dr. Benge told Williams that he would be using

7

a medical resident to "assist" him—a disclosure Dr. Benge and Dr. Giacobbe testified they made and Williams denies they made. However, the evidence is undisputed that Dr. Benge did not tell Williams that he would be turning over all the surgery on one side of Williams' body to Dr. Giacobbe. Rather, Dr. Giacobbe testified that Dr. Benge did not even tell *her* what part of the surgery she would be performing until after the surgery began. And the evidence is undisputed that neither Dr. Benge nor Dr. Giacobbe told Williams that this would be Dr. Giacobbe's first LAVH procedure. The operation left Williams with a life-threatening perforated bowel on the left side of her body—the side on which Dr. Giacobbe had performed the operation.

Immediately following the LAVH, Williams developed severe pain, abdominal tenderness, nausea, and a fever due to a perforated bowel. Dr. Benge checked her the next day, but failed to diagnose the perforated bowel. Instead, he went home sick and turned over Williams' care to Dr. Carmen Thornton. Three days after the surgery, Dr. Thornton ordered a consultation with a gastroenterologist. The gastroenterologist performed emergency exploratory surgery that same night and determined that Williams had an undiagnosed bowel perforation that was allowing feces from her intestines to leak into her abdomen. A colostomy was required and performed. Williams developed sepsis, underwent

8

a tracheotomy, and was placed in a medically induced coma. She suffered months of rehabilitation, including having to learn to breathe, walk, and talk again.

Williams was left with her vagina, bladder, and rectum fused together, and they had to be separated when doctors attempted to reverse the colostomy. However, the colostomy could not be reversed because there was not enough of Williams' rectum and intestines left to stretch for the repair. Multiple surgeries followed, but the colostomy remained permanent, requiring the use of a colostomy bag. Williams is unable to have normal sexual relations, and she has ongoing depression, anxiety, and post-traumatic stress disorder, as well as physical symptoms.

Dr. Zepeda, Dr. Benge's own medical liability expert, agreed that all of Williams' injuries were a direct result of the LAVH performed by Dr. Benge. Dr. Patsner, Williams' expert, likewise testified that all of Williams' surgeries and complications were a result of the LAVH.

There was conflicting evidence at trial from which the jury could have concluded either that Williams' bowel perforation was caused by an electrical arc from a medical instrument, a Bovie, used during the LAVH, as Dr. Benge theorized, or from a slit in Williams' bowel on the side on which the resident, Dr.Giacobbe, performed the operation, as Williams' expert testified. Either way, both Dr. Benge and his expert, Dr. Zepeda, agreed that Dr. Benge was responsible

9

for any acts of negligence committed by Dr. Giacobbe. Dr. Zepeda agreed "absolutely" with the proposition that doctors are always responsible for the acts of the residents they supervise.

With respect to Dr. Benge's failure to disclose to Williams that he intended to use Dr. Giacobbe as a co-surgeon, the record reflects the following exchange between Dr. Benge's counsel and Williams's expert, Dr. Patsner:

> Q: Well, let's talk a little bit about some of the claims we've made in this case. . . . Would you say that [Dr. Benge] violated the standard of care if he did not explain that the third-year resident—doing this, her first-time procedure—was going to be performing a part of the surgery?
>
> A: Well, yes. There's a—I mean, there's a difference between being just an assistant and being a co-surgeon.
> . . .
> So in this particular instance there were two surgeons.
> . . .
> The—the standard of care is to get permission from the patient for everybody who's going to be operating on them. You can't have ghost surgeons.
>
> Q: Period? End of story?
>
> A: Period.

**B.    *The Jury Charge***

At the charge conference, Dr. Benge objected to submission of Williams' case to the jury on a single broad-form negligence question as to liability, objecting to "Question No. 1, negligence, because the broad-form submission allows the jury

10

to base its finding on a violation of informed consent and that that theory is not supported by the pleadings or the evidence." The trial court overruled the objection.

Dr. Benge did not seek a legal ruling on his argument that his alleged failure to disclose his intended use of either "an assistant" or an unqualified co-surgeon constituted an invalid separate and independent theory of liability for Williams' injuries that should be separately submitted to the jury as the proximate cause of some or all of her damages.

Dr. Benge did request, in writing, an instruction to the jury that "in deciding whether any defendant was negligent, you cannot consider what the defendant told, or did not tell, the plaintiff about the resident physician being involved with the surgery." He did not state any reason for requesting this instruction, and the trial court refused it.

The case was presented to the jury on a single-broad form negligence question as to liability: "Did the negligence, if any, of any of those named below proximately cause Lauren Williams' injuries in question?" Those named were Dr. Benge, Dr. Thornton, and Williams. An instruction defined negligence with respect to the physicians as "failure to use ordinary care that is, failing to do that which an obstetrician/gynecologist of ordinary prudence would have done under the same or similar circumstances or doing that which an obstetrician/gynecologist

of ordinary prudence would not have done under the same or similar circumstances."

The jury found that Dr. Benge was negligent and that Dr. Thornton and Williams were not. It awarded Williams $240,000 in damages for past and future pain and mental anguish; $302,609 for past and future lost earning capacity, zero damages for disfigurement, $20,000 for past and future physical impairment, and $1,332,960.14 for past and future medical expenses. It was not asked to find, and did not find, any separate damages for breach of a duty to disclose.

**Analysis**

Dr. Benge argues and the majority concludes that (1) Dr. Benge preserved his complaint by his objection to broad-form submission of Williams' negligence claim on the ground that the question "allows the jury to base its finding on a violation of informed consent and . . . that theory is not supported by the pleadings or the evidence"; (2) as a matter of law, a physician has no duty to disclose to a patient that he intends to turn over laparoscopic-assisted surgery on half of a patient's body to a co-surgeon who has never performed the operation; (3) the failure to make such a disclosure is a separate theory of liability that cannot, as a matter of law, constitute an act of professional negligence; (4) it was harmful error for the trial court to refuse to include this separate theory of liability in the charge and, likewise, to refuse to include an instruction to the jury to disregard all

12

evidence relating to the theory of failure to disclose; (5) under the Texas Supreme Court's ruling in *Felton*, a physician has no statutory duty to disclose the intended use of an unqualified co-surgeon to perform half of a patient's laparoscopic-assisted surgery, so that this unpled theory of liability is invalid; (6) the trial court erred in failing to submit this unpled and invalid theory of liability to the jury as a separate question while allowing it to consider evidence of the physician's use of an unqualified and inexperienced resident as an undisclosed co-surgeon as professional negligence; and (7) this error caused the jury to award damages based on the unsubmitted, unpled, and invalid theory of liability and was so harmful that (8) the appellate court is required by *Casteel* to reverse the judgment of the trial court and remand the case for retrial—without submission of the invalid, unpled, unsubmitted theory, *and* without evidence relating to it. I disagree with each of these arguments and conclusions and believe that they are contrary to established legal authority.

### A. Preservation of Error

Dr. Benge made the following objection to the jury charge: "Question No. 1, negligence, because the broad-form submission allows the jury to base its finding on a violation of informed consent and that that theory is not supported by the pleadings or the evidence." I would hold that this objection did not preserve Dr. Benge's complaint.

Texas Rule of Civil Procedure 274, governing preservation of alleged error in the jury charge, requires that an objecting party "must point out distinctly the objectionable matter and the grounds of the objection," stating that "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. Likewise, Texas Rule of Appellate Procedure 33.1 requires a complaining party (1) to make a timely objection to the trial court that "state[s] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context" and (2) to obtain a ruling on his objection. *See* TEX. R. APP. P. 33.1(a); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). Under the preservation rules as articulated by the Texas Supreme Court, "A timely objection, plainly informing the court that a specific element . . . should not be included in a broad-form question because there *is no evidence to support its submission, . . .* preserves the error for appellate review." *Thota v. Young*, 366 S.W.3d 678, 691 (Tex. 2012) (emphasis in original) (quoting *Harris Cnty. v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002)).

Here, Dr. Benge did just the opposite of what the preservation rules require. His sole argument regarding his objection to the charge was that the jury *might*

14

have considered his "violation of informed consent" *as an element of malpractice*, implying that it was not an element of malpractice, and not proof of malpractice, but a separate theory of liability. He then asked that the jury be instructed to disregard all evidence of anything he had said to Williams about Dr. Giacobbe's qualifications. He did *not* object that the broad-form negligence question on which the case was submitted to the jury contained a specific element as to which there was *no evidence*. He objected that the single broad-form liability question on negligence permitted the jury to consider *evidence* in the record of what he argued was an *unpled theory* of breach of the duty to disclose that was "*not supported by the pleadings or the evidence*." At the same time, he, inconsistently, requested an instruction that the jury could not consider the *evidence* of "what [Dr. Benge] told, or did not tell, [Williams] about the resident physician being involved with the surgery" that *was* present in the record. An objection to a broad-form question that it includes a theory as to which there *is* evidence a party does not want the jury to consider does not preserve error. *See Thota*, 366 S.W.3d at 691. Moreover, Dr. Benge did not satisfy Rule 274, requiring that an objecting party "must point out distinctly the objectionable matter and the grounds of the objection." *See* TEX. R. CIV. P. 274; *Thota*, 366 S.W.3d at 690–91. I would hold that the objection Dr. Benge made to the charge was insufficient to preserve his complaint on this point because it contradicted Rule 274 and *Thota*.

I would also hold that Dr. Benge's objection was insufficient to preserve error because the link between the objection and the argument on appeal that the charge violated *Casteel* was not specifically stated and because the objection and argument on appeal are inconsistent both with each other and with *Casteel*. *Casteel* holds that the trial court's submission of the case to the jury on a single broad-form negligence question is harmful error requiring reversal when it permits the jury to find damages on an invalid theory that was *pled* along with a valid one. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387–88 (Tex. 2000); *see also Payne*, 838 S.W.2d at 241 (stating that test for determining preservation of error in charge is "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling"). Dr. Benge argues, and the majority agrees, that the theory he claimed Williams had *not* pled was not supported by the professional negligence pleadings or the evidence. I do not see how this objection can satisfy Rule 33.1's and *Payne*'s requirement that an objection "state[] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A); *Payne*, 838 S.W.2d at 241.

But even if I could agree that Dr. Benge preserved his complaint, I could not agree that the trial court erred or that the objection on which this appeal is based is valid.

16

## B.     Charge Error

Texas Rule of Civil Procedure 277 mandates broad-form submission "whenever feasible."  TEX. R. CIV. P. 277; *see also Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (interpreting "whenever feasible" as mandating broad-form submission "in any or every instance in which it is capable of being accomplished"); Comm. on Pattern Jury Charges, State Bar of Tex., *Tex. Pattern Jury Charges: General Negligence & Intentional Personal Torts* PJC 4.1 cmt. (2012).  Rule 278 provides that the trial court must "submit the questions, instructions and definitions in the form provided by Rule 277, which are *raised by the written pleadings and the evidence*."  TEX. R. CIV. P. 278 (emphasis added); *Smith*, 96 S.W.3d at 236 ("Whether a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence.").

Except in certain "special proceedings in which the pleadings are specially defined by statutes or procedural rules*, a party shall not be entitled to any submission of any question* raised only by a general denial and *not raised by affirmative written pleading by that party*."  TEX. R. CIV. P. 278 (emphasis added). And failure to submit a question, definition, or instruction "shall not be deemed a ground for reversal of the judgment unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of

17

the judgment." *Id.* "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279. Moreover, "if the trial court has 'to resolve a legal issue before the jury could properly perform its fact-finding role[,] . . . a party must lodge an objection in time for the trial court to make an appropriate ruling without having to order a new trial." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (quoting *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam)).

The trial court has considerable discretion in determining proper jury instructions. *Thota*, 366 S.W.3d at 687. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Id.* (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009)). An appellate court does not reverse a judgment for charge error unless the error was harmful "because it 'probably caused the rendition of an improper judgment' or 'probably prevented the petitioner from properly presenting the case to the appellate courts.'" *Id.* (quoting TEX. R. APP. P. 44.1, 61.1).

In my view, every rule governing proper jury questions and instructions set out above would have been violated had the trial court submitted questions or instructions, at Dr. Benge's request, based on the theory that Dr. Benge's failure to

18

disclose his intended use of an unqualified physician as a co-surgeon constituted a separate unpled and invalid cause of action of "failure to disclose" that did not constitute medical malpractice but as to which there was evidence and for which damages are separately recoverable so that it was required to be separately submitted to the jury. Thus, in my view, the majority opinion, which adopts each of these premises, erroneously construes the mandates of Rules of Civil Procedure 277, 278, and 279 and Rule of Appellate Procedure 44.1.

Only one liability theory was pled by Williams: breach of the standard of care of an ordinarily prudent surgeon performing an LAVH operation. Neither party pled breach of a statutory or separate common law duty to disclose. Rather, Williams alleged only that Dr. Benge violated the standard of care of an ordinarily prudent gynecological surgeon by failing to disclose that Dr. Giacobbe, for whom he had supervisory responsibility, would be performing half of Williams' LAVH operation by herself and that she had never done such an operation before and then by using her to perform 50% of the surgery and negligently supervising her work so that she pierced Williams' bowel, causing severe injuries. There was evidence from which the jury could have found all of these facts, and there was expert testimony that each of these acts was an act of malpractice.

The allegedly invalid theory of failure to disclose was not raised by the written pleadings, and Dr. Benge argued that it also was not raised by the evidence

19

before arguing that it *was* raised by the evidence. Therefore, he cannot argue on appeal that the charge was improper under Rules 277 and 278. *See* TEX. R. CIV. P. 278 (requiring that trial court submit only questions and instructions "raised by the written pleadings and the evidence"). Dr. Benge did not ask the trial court to determine whether Williams had actually pled failure to disclose as a separate cause of action or to rule that the issue had been tried by consent, as required by *Osterberg*. *See* 12 S.W.3d at 55 (requiring that party lodge objection in time for trial court to make appropriate ruling if required "to resolve a legal issue before the jury could properly perform its fact-finding role"). He made no proper request for an instruction going to whether Williams was entitled to recover damages on the independent theory of recovery for failure to disclose that he now asserts on appeal, nor did he submit such an instruction in substantially correct form, as required by Rule 278. *See* TEX. R. CIV. P. 278. Thus, he waived the complaints of jury charge error upon which he relies on appeal. *See* TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived.").

There is absolutely nothing to show error in the charge in this case. Rather, review of the pleadings, the record, the evidence, and the rules of procedure confirms that submission of this case to the jury on a broad form negligence

20

question was not only within the trial court's discretion but the *only* proper form for submission. *See* TEX. R. CIV. P. 277 (requiring that "the court shall, whenever feasible, submit the cause upon broad-form questions"); *E.B.*, 802 S.W.2d at 649 (interpreting "whenever feasible" as mandating broad-form submission "in any or every instance in which it is capable of being accomplished"); *Tex. Pattern Jury Charges: General Negligence & Intentional Personal Torts* PJC 4.1 cmt.

The majority, however, concludes that Dr. Benge not only preserved error but showed reversible error in the jury charge. I turn, therefore, to the merits of Dr. Benge's argument on appeal that Williams' case included an invalid theory of liability that should have been submitted to the jury separately from her malpractice claim.

### C. **Felton** *and Breach of the Duty to Disclose*

The majority characterizes the evidence relating to Dr. Benge's failure to disclose that he was using an unqualified and inexperienced co-surgeon not as part of the evidence showing his breaches of the duty of care of a surgeon but as evidence that Williams' pleadings included as an invalid theory of liability separate from medical negligence. In my view, this re-characterization of the theory of liability pled by Williams and tried to the jury has no valid basis either in Williams' pleadings or in the law. Yet the majority's holding depends entirely upon this re-characterization of the case at Dr. Benge's invitation and its

21

interpretation of the law governing the physician's duty to disclose the use of an assistant.

As the majority states, the common law—the law that encompasses medical negligence—requires that a reasonable health care provider must disclose "the risks that would influence a reasonable patient in deciding whether to undergo treatment." Slip Op. at 46 (quoting *Felton v. Lovett*, 388 S.W.3d 656, 661 (Tex. 2012)). The common law risks that must be disclosed under *Felton* are those "inherent" in treatment, i.e., risks "that 'exist[] in and [are] inseparable from the procedure itself.'" *Felton*, 388 S.W.3d at 661. "Inherent risks of treatment are those which are directly related to the treatment and occur without negligence." *Id.* at 662.

*Felton* distinguished the common law duties of physicians from the statutory duty to disclose set out in Civil Practice and Remedies Code section 74.106, even as the court recognized that, "probably in all cases, the common-law and statutory duties are congruent." *Id.* at 661. "Malpractice, for example," the court pointed out, "is an extraneous risk, one that inheres in the *practice* of health care, not in the care itself," and thus is *itself* not an inherent risk of surgery that must be disclosed. *Id.* at 662 (emphasis in original).

Williams, however, made no claim that Dr. Benge failed to comply with the disclosure statute, Civil Practice and Remedies Code section 74.101. And her

22

claim was not that Dr. Benge was liable to her for her injuries because he failed to disclose the use of a resident as an assistant.

Williams claimed that Dr. Benge did not use the standard of care of an ordinarily prudent gynecological surgeon in performing her LAVH; and she included, among Dr. Benge's acts of malpractice as a supervising surgeon responsible for the work of Dr. Giacobbe, his failure to disclose a *risk inherent in* in "the care itself," namely, the greatly increased risk that an inexperienced, unqualified surgeon performing laparoscopic-assisted vaginal surgery for the first time, by herself, with only the instructions and example of her co-surgeon on the other side of the patient's body as guidance, will make a mistake that a qualified surgeon who had performed an LAVH in the past would not make, causing harm to the patient. This is exactly the type of risk that must be disclosed under *Felton*. *See id.* at 661 (requiring that "a reasonable health care provider must disclose the risks that would influence a reasonable patient in deciding whether to undergo treatment"). The law does not permit physicians to use patients as guinea pigs without their consent. And doing so is exactly the type of act that is probative of breach of the professional standard of care.

Here, Williams paid for Dr. Benge's mistakes with her health and almost with her life. She did so not because Dr. Benge failed to disclose that he would be using an assistant but because, as Williams' gynecological surgeon, he had a duty

23

to perform the surgery at a professional level. And the evidence—including expert testimony of the standard of care of a gynecological surgeon performing an LAVH procedure—shows that he used an unqualified physician to perform half the surgery; that he failed to disclose either to Williams or to his co-surgeon the extent of the surgery he expected his co-surgeon to perform; that it was risky to turn over half of this sophisticated surgery to someone who had never done this type of surgery; that both his use of the physician he was supervising in this way and his failure to disclose his use of an unqualified co-surgeon to perform half of Williams' surgery were breaches of his professional standard of care; that the unqualified physician he was supervising perforated Williams' bowel; and that Williams almost died and suffered life-long injuries from this wound. A jury's consideration of *evidence* of duty, breach, causation, and injury in determining a physician's liability for breach of the standard of professional care and damages for a professional negligence claim is *not* consideration of commingled valid and invalid *theories* of liability.

Dr. Giacobbe testified that Dr. Benge did not disclose *even to her* the extent of the surgery she would be performing. The evidence is undisputed that he did not disclose this fact to Williams. Nor did Dr. Benge disclose that Dr. Giacobbe had never performed an LAVH. And Dr. Zepeda, Dr. Benge's own medical liablity expert, agreed that "[a]bsolutely," doctors are always responsible for the

24

acts of the residents they supervise, as did Williams' expert, Dr. Patsner. This is all critical evidence of breach of Dr. Benge's duties as a surgeon, and it is evidence that Dr. Benge wanted withheld from the jury in this malpractice case. To my mind, the jury was clearly entitled to consider this evidence, along with all the other evidence of Dr. Benge's breaches of the standard of professional care of an ordinarily prudent gynecological physician performing an LAVH, in making its decision whether Dr. Benge was medically negligent and thereby foreseeably caused Williams' injuries.

The majority does not point to any evidence in the record to rebut Dr. Patsner's expert testimony that the standard of care of a physician performing a hysterectomy includes a duty "to get permission from the patient for everybody who's going to be operating on them" or to rebut Dr. Patsner's, Dr. Zepeda's, and Dr. Benge's testimony that Dr. Benge was responsible for any acts of negligence committed by Dr. Giacobbe, whom he was supervising and to whom he turned over half of Williams' surgery.

Instead, the majority assumes, contrary to the testimony and the pleadings, that there is *no* difference between "being just an assistant and being a co-surgeon"; that Dr. Giacobbe was only an assistant (which was a question for the jury); that there is no duty to disclose the intended use of an unqualified co-surgeon under the section of the MLA that deals with the risks of surgery; that this

25

failure to disclose the risks of using an unqualified co-surgeon is *not* below the standard of care of a gynecological surgeon (despite expert testimony to the contrary) ; that, therefore, Dr. Benge could not have been committing malpractice when he handed over half the surgery to an unqualified co-surgeon and failed to disclose to Williams how he intended to perform the operation; that the claim that Dr. Benge violated the duty to disclose was, instead of evidence, a disguised separate and invalid theory of liability; that it was harmful error for the trial court to refuse to submit this unpled theory of liability to the jury separately from Williams' negligence theory; that it was also harmful error for the trial court to refuse to instruct the jury not to consider any evidence of what Dr. Benge told Williams about Dr. Giacobbe; and, because this invalid theory was not separately submitted and the evidence of failure to disclose was before the jury, that the jury probably found damages—or most or all of the damages—it attributed to Dr. Benge's malpractice only on the unpled and invalid theory of recovery for a violation of the MLA's disclosure requirement. All of these assumptions flow from the majority's initial mischaracterization of Dr. Benge's failure to disclose Dr. Giacobbe's lack of qualification as a separate theory of liability from malpractice, rather than as one of a number acts from which the jury could have reasonably concluded that Dr. Benge breached the standard of professional care of

26

a gynecological surgeon performing an LAVH, and from its conclusion that Dr. Benge preserved genuine errors in the charge.

Notably, although the majority's holding depends on its conclusions that it is *not* a breach of the professional standard of care for a surgeon to fail to disclose that an unqualified and inexperienced co-surgeon will be performing half of an operation and that this act is not a breach of any other duty, the majority does not make an argument from authority for these conclusions other than its construction of *Felton*, the argument that no other court has recognized the duty the majority introduces into the case and finds invalid, and an argument by analogy to medical battery. *See* Slip Op. at 43–50.

I cannot agree with the majority that this case shows any error in the charge. This conclusion becomes even more compelling when the majority's holding that the trial court's jury charge error was so harmful that the judgment must be reversed and the case remanded for retrial under *Casteel* is considered.

### D. **Casteel *and the Commingling of Valid and Invalid Theories of Liability***

When a charge issue is properly preserved and contested on appeal, the appellate court reviews the basis of the complaint and reverses only if the alleged charge error was harmful. TEX. R. APP. P. 44.1(a) (stating standard for reversible error); *Thota*, 366 S.W.3d at 691.

In *Casteel*, the supreme court found harmful error because the single broad-form question submitted to the jury for violation of Insurance Code article 21.21 included not only the plaintiff's claims of liability for violations of the DTPA incorporated into the Insurance Code, for which he had standing, but also the plaintiff's claims for DTPA violations for which he did not have standing because he was not a consumer within the definition contained in the DTPA. *See* 22 S.W.3d at 386–87. Under *Casteel*, "when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory." *Id.* at 388; *see also* TEX. R. APP. P. 44.1(a) (providing, "No judgment may be reversed on appeal . . . unless the court of appeals concludes that the error complained of . . . probably prevented the appellant from properly presenting the case to the court of appeals").

In *Harris County v. Smith*, the supreme court extended the *Casteel* holding to broad-form liability questions that commingle damage elements when an element is unsupported by legally sufficient evidence. 96 S.W.3d at 234. Under *Casteel* and *Smith*, the appellate courts "presume that the error was harmful and reversible and a new trial required when [they] *cannot determine whether the jury based its verdict solely on the improperly submitted invalid theory or damage*

28

*element.*"  *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 756 (Tex. 2006) (emphasis added).

*Casteel* and *Smith* both require that a plaintiff have actually *pled* an invalid theory of recovery and have then sought damages from the jury under a single broad-form liability question that permitted the recovery of damages on the invalid theory as well as on a valid theory.  Here, the contention that the broad-form negligence question on liability submitted to the jury permitted the jury to award damages on an invalid theory of breach of a non-existent *unpled* and *unsubmitted* duty to disclose is entirely a *defensive* argument raised by *Dr. Benge*.  What *Williams* asked the jury to find was whether Dr. Benge's act of using an undisclosed, unqualified co-surgeon to perform half of her LAVH surgery, among other acts, breached the standard of care of a gynecological surgeon and proximately caused her injuries.  And she rested her case on her ability to prove that Dr. Benge's acts breached the standard of care of a gynecological surgeon performing an LAVH, causing her injuries and justifying the damages awarded her.

Nevertheless, Dr. Benge argues, and the majority concludes, that the single broad-form liability question on negligence submitted to the jury improperly sought damages on the unpled invalid theory Dr. Benge proposes.  And Dr. Benge argues, and the majority concludes, that the unpled and unsubmitted invalid theory

29

formed the primary or even "the sole basis of the jury's finding" that Dr. Benge committed malpractice, entitling Williams to damages. And Dr. Benge argues, and the majority concludes, that this separate, unpled, invalid cause of action on which the trial court submitted no question and no instruction to the jury so infected the damages award that the judgment must be reversed and the case tried again without it.

In my view, even assuming that Dr. Benge preserved a claim of error in the submission of the charge, what the majority views as an infectious unpled and unsubmitted—but considered—*theory of liability* is only *evidence* from which the jury could reasonably have concluded that Dr. Giacobbe did act as a co-surgeon; that she was not qualified; that her mistake caused Williams' injuries; and that Dr. Benge's performance as the sole disclosed surgeon and as Dr. Giacobbe's supervising physician fell below the standard of care of a surgeon performing an LAVH because he knew of Dr. Giacobbe's lack of experience, used her as a co-surgeon anyway, failed to adequately instruct and supervise her, and failed to disclose either to Williams or to Dr. Giacobbe herself how he intended to use Dr. Giacobbe in performing the operation. I believe this evidence was properly submitted to the jury and is both legally and factually sufficient to support the jury's finding that Dr. Benge breached the standard of care of a reasonably prudent

physician performing an LAVH, entitling Williams to damages for her injuries caused by the breach.

## Conclusion

The majority separates the failure to disclose the use of an unqualified resident as a co-surgeon from the professional duties of a supervising surgeon, declares it not to be an element of professional negligence, despite unrebutted expert testimony to the contrary, and requires that failure to disclose be pled separately as a statutory violation with its own damages. Thus, in my view, it dramatically broadens the scope of *Felton.* Likewise, it dramatically broadens the concept of reversibility on *Casteel* grounds by concluding that it was harmful error for the trial court *not* to submit this unpled and invalid theory of liability to the jury, improperly allowing the jury to award damages to Williams based, in part, on unrebutted expert testimony that Dr. Benge breached the professional standard of care of a gynecological surgeon performing an LAVH by, among other acts, failing to disclose his intention to use an unqualified co-surgeon to perform half of the surgery by herself. And it draws both of these conclusions despite Dr. Benge's failure to comply with any of the rules that would permit this Court to find that he preserved the charge error of which he complains on appeal.

The foreseeable result of the majority's holding is that its opinion will cause future litigants to attempt to do the same thing Dr. Benge has successfully done

31

here: to re-characterize a properly pled, tried, and decided negligence case submitted to the jury on a broad-form liability question as one in which the pleadings did not mean what they said; one in which, as a matter of law, it is *not* an act of malpractice for a surgeon to fail to disclose that he is using a co-surgeon for an LAVH who has never performed the operation, has no qualifications to perform it, and nevertheless will be performing the entire operation on one-half of the patient's body; one in which evidence that a supervising physician failed to disclose his intended use of an unqualified and inexperienced co-surgeon may not even be submitted to the jury and is harmful error unless excluded; one in which a jury may be presumed to have awarded damages on a theory of recovery that is invalid, that was not pled, and that was not submitted to it in the charge either by questions or by instructions; one in which a carefully articulated damages question listing only elements of damages validly recoverable for medical negligence nevertheless conceals a finding of damages on an unpled and unsubmitted theory of breach of the statutory duty to disclose; and one in which the failure to separate out this unpled and unsubmitted theory of liability and exclude it from consideration is deemed to be harmful error by the trial court that requires reversal of the trial court's judgment by the appellate court and retrial *without* the same unsubmitted theory of recovery *and* also without material evidence of professional negligence related to duty, breach, and causation of the plaintiff's injuries.

The result of the majority's analysis is that this case is remanded to be *retried* on the *same* theory and *same* facts on which it was tried the first time, and to seek the *same* elements of damages under the *same* charge—but with an instruction that evidence that Dr. Benge used an unqualified and inexperienced resident physician he was supervising as an undisclosed co-surgeon is not evidence of breach of the standard of professional care and must not be considered. Indeed, the majority effectively declares such evidence inadmissible.

For the foregoing reasons, I cannot join the majority opinion. I therefore respectfully dissent. Finding no error, I would affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Justice Keyes, dissenting.

33